UNITED STATES, Appellee,

v.

Donald McCONNICO, Specialist Four,
U.S. Army, Appellant.

No. 34,418.

CM 435387.

U. S. Court of Military Appeals.

Aug. 27, 1979.

Appearances: For Appellant: *Captain John M. Zoscak, Jr.* (argued); *Colonel Robert B. Clarke, Major Benjamin A. Sims, Captain Larry D. Anderson* (on brief); *Lieutenant Colonel John R. Thornock.*

For Appellee: *Captain Lee D. Schinasi* (argued); *Colonel Thomas H. Davis, Lieutenant Colonel R. R. Boller* (on brief); *Major Michael B. Kennett.*

## Opinion

### FLETCHER, Chief Judge:

A military judge found Specialist Four Donald McConnico guilty of being an accessory after the fact, in violation of Article 78, Uniform Code of Military Justice, 10 U.S.C. § 878. Such a finding was contrary to the appellant's pleas. The principal crime from which this accessory offense sprang was an assault with a dangerous weapon committed by a soldier named Perdue, in violation of Article 128, UCMJ, 10 U.S.C. § 928. McConnico was sentenced at

his general court-martial to a bad-conduct discharge, confinement at hard labor for 3 months, and forfeiture of $150 pay per month for 6 months. The convening authority approved the findings and sentence; the Army Court of Military Review affirmed the same.

The Government particularly charged the appellant with transporting Perdue by car away from the scene of a shooting in order to prevent or hinder the latter's apprehension. In order to successfully prosecute such an accessory charge, it was incumbent upon the Government to establish as a necessary element of this offense the commission of the assault crime by the principal offender Perdue. *See* Article 78, UCMJ, and para. 157, Manual for Courts-Martial, United States, 1969 (Revised edition). To partially achieve this purpose, the trial counsel offered as evidence the purported confession of Perdue to the shooting. This confession also contained statements which directly implicated the appellant as an accessory after the fact. The foundation for the admission of the proffered evidence was the testimony of Agent Hart who related to the court the voluntary circumstances surrounding the making of this confession. Both parties before the military judge at this court-martial agreed that Perdue was unavailable to personally testify as to these matters because his own conviction was not

yet final and he would refuse to testify at McConnico's court-martial, relying on his privilege against self-incrimination.

■ Defense counsel at trial nonetheless objected to the introduction of this evidence on constitutional[1] grounds in that the statements contained in the confession were not subject to cross-examination and the accused was not permitted to confront the witness against him.[2] He further asserted that the introduction of such testimony was not authorized by the careful rules for admission of evidence delineated in the Manual for Courts-Martial.[3] After considering arguments from both sides on this issue, the military judge admitted the confession of Perdue as evidence in the trial of the appellant. However, he specifically limited his consideration of it to the issue of whether the principal crime committed by Perdue had in fact occurred. Such a matter of proof was a necessary, but not the sole, element of the accessory offense charged against the appellant. *See* Article 78, UCMJ; para. 157, Manual, *supra*. Moreover, he expressly excluded from his consideration any parts of the confession which implicated McConnico as an accessory after the fact to the principal offense.[4] Other evidence was adduced at trial which showed the commission of the principal crime by

---

1. U.S.Const. amend. VI.

2. *See generally* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 Harv.L.Rev. 567 (1978).

3. Trial defense counsel particularly referred to para. 145, Manual for Courts-Martial, United States, 1969 (Revised edition).

4. It must be pointed out that the placing of this portion of Perdue's confession before the military judge for his ruling on its admissibility when he is later to be the ultimate finder of fact is materially different from the situation confronting the Supreme Court in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There, the inadmissible hearsay evidence was paraded before an impressionable jury under circumstances in which the Supreme Court felt instructions by the trial judge would not adequately safeguard the defendant's right of confrontation. *See Parker v.*

*Randolph*, ⸺ U.S. ⸺, 99 S.Ct. 2132, 2137–38, 60 L.Ed.2d 713 (1979). We are not faced with such a situation involving the practical and human limitations of the jury system. *See Bruton v. United States, supra* 391 U.S. at 135–36, 88 S.Ct. 1620, cited in *Parker v. Randolph, supra*. In the appellant's case, the portion of the statement found inadmissible was presented to a military judge who ruled in open court that he would not consider this portion of the confession in his deliberations on findings. A military judge is trained in the law of the evidence and is required to conduct a fair trial; accordingly, in the absence of some showing of abuse of his judicial role, it may be presumed that he acts as he says he will. *See United States v. Graves*, 1 M.J. 50, 53 (C.M.A.1975). In this context, the military judge's ruling adequately safeguards the accused's right to confrontation as to the unconsidered but displayed portion of this confession. *Parker v. Randolph, supra*.

Perdue and the unlawful accessoryship of McConnico.[5]

The issue granted by this Court for consideration is:

WHETHER THE ACCUSED WAS DENIED HIS RIGHT OF CROSS EXAMINATION WHEN THE OUT OF COURT STATEMENTS OF THE ASSAILANT WERE ADMITTED AGAINST THE ACCUSED.

▮▮ At the outset, it must be recognized that the rule against hearsay evidence and the Confrontation Clause are not congruous. *California v. Green*, 399 U.S. 149, 155–56, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). The former is an evidentiary rule based on experience within a particular jurisdiction and grounded in the notion that untrustworthy evidence in a civil or criminal trial should not be presented to the trier of fact. *See Chambers v. Mississippi*, 410 U.S. 284, 298–99, 93 S.Ct. 1038, 1047, 35 L.Ed.2d 297 (1973). The Supreme Court has noted that within these jurisdictions:

A number of exceptions have developed over the years to allow admission of hearsay statements made under circumstances that tend to assure reliability and thereby compensate for the absence of the oath and opportunity for cross-examination. (*Id.*)

*See also United States v. Johnson*, 3 M.J. 143, 147 (C.M.A.1977). The latter, however, is a constitutional provision designed to prohibit in criminal trials "the practice of trying defendants on 'evidence' which consisted *solely* of *ex parte* affidavits or depositions" which deny "the defendant the opportunity to challenge his accuser in a face-to-face encounter[6] in front of the trier of fact." *See California v. Green, supra* 399

U.S. at 156, 90 S.Ct. at 1934. (Emphasis added.) "[T]he mission of the Confrontation Clause is to advance a practical concern for the accuracy of the truth-determining process in criminal trials by assuring that 'the trier of fact [has] a satisfactory basis for evaluating the truth of the prior statement.' . . . ." *Dutton v. Evans*, 400 U.S. 74, 89, 91 S.Ct. 210, 220, 27 L.Ed.2d 213 (1970). Thus simply "because evidence is admitted in" accordance with "a long established hearsay rule" or in violation thereof, allows no "automatic conclusion" to be drawn with respect to an accused's confrontation rights under the Sixth Amendment. *California v. Green, supra* 399 U.S. at 156, 90 S.Ct. 1930. These are two separate questions. Accordingly, it is necessary to determine first whether the confession of Perdue was admissible in the appellant's case as a matter of evidentiary law applicable at court-martial, and second, whether such an admission particularly violated the appellant's right to confrontation guaranteed by the Sixth Amendment to the Constitution. Finally, if either error is found to exist, it must be tested for sufficient prejudice[7] to justify reversal of the conviction.

I

The first evidentiary issue to be resolved by this Court is whether para. 140*a* (6), Manual, *supra*, prohibits the use of Perdue's confession in the government's case-in-chief against the appellant. This Manual provision provides:

(6) *Miscellaneous.* A confession or admission not made as testimony in the trial is admissible for the purpose of proving the truth of the matters stated in the

---

5. The issue of the sufficiency of the evidence to convict the appellant of the accessory after the fact offense was not granted for review. Accepting the fact that the inadmissible portion of Perdue's confession may not be considered as to this issue, a review of the record of trial in light of *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1941), indicates sufficient evidence, even as described by the dissent, to otherwise support this finding of guilty.

6. *See Mattox v. United States*, 156 U.S. 237, 242–243, 15 S.Ct. 337, 39 L.Ed. 409 (1895).

7. The evidentiary error must be tested for substantial prejudice under Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a). Any constitutional error of this nature must be examined under the more stringent standard stated in *United States v. Moore*, 1 M.J. 390, 392 (C.M.A.1976). *See also Parker v. Randolph, supra* 99 S.Ct. at 2141–43 (Blackmun, J., concurring in part).

confession or admission only when the person who made it is an accused in the case, and it is then admissible for that purpose only with respect to, and against, the accused who made it. These limitations do not apply, however, if the statement is admissible to prove the truth of the matters stated therein without regard to the fact that it is a confession or admission, as when in his testimony at a former trial of the accused an accomplice has made a confession damaging to the accused which is admissible as former testimony under 145*b*.

At the court-martial, the Government offered this confession to establish the commission of the principal offense by Perdue, an essential element of the appellant's prosecution as an accessory after the fact under Article 78, UCMJ.[8] The military judge stated that the portion of this confession which inculpated the appellant as an accessory after the fact would not be considered by him in reaching his findings.

■ It is clear that the introduction of a portion of Perdue's confession brought before the court-martial hearsay evidence. *See* para. 139*a*, Manual, *supra*. However, not all hearsay evidence is barred from use at a court-martial if it is determined to fall within certain well-established exceptions to this general rule of evidence. The Manual lists the principal exceptions to this rule but it does not presume to list all its exceptions. *See United States v. Johnson, supra* at 146 n. 3. "So far as not otherwise prescribed in the Manual, 'the rules of evidence generally recognized in the trial of criminal cases in the United States district courts . . . will be applied by courts-martial.' Paragraph 137, MCM; *see United States v. Weaver*, 23 U.S.C.M.A. 445, 450, 50 C.M.R. 464, 469, 1 M.J. 111, 116 (1975)." *Id.* Accordingly, the question is whether para. 140 *a* (6), Manual, *supra*, established a clear cut,

definite and precise rule of evidence barring the use of this evidence for the limited purpose it was accepted by the military judge in the present case. *See United States v. Smith*, 13 U.S.C.M.A. 105, 109, 32 C.M.R. 105, 109 (1962).

■ To resolve this particular issue, it is first necessary to turn to the language of the provision itself. Its initial prohibitory language at first glance appears to be rather broad and to apply to the limited use of the confession in the case before us. Yet, the subsequent language indicates the rule is not absolute and its limitations not applicable in somewhat nebulously defined situations. In view of such equivocation, it is necessary to search the legislative history of the provision to find the intended meaning of its drafters. Here, it can be readily seen that the express purpose of the provision was to prohibit the use of such evidence to exculpate a military accused. *See* Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, p. 217, citing *Donnelly v. United States*, 228 U.S. 243, 272, 33 S.Ct. 449, 57 L.Ed. 820 (1913). In addition, the extremely scarce military case law as to this issue found no prohibition against the use of a confession of a principal to establish in a trial of an accessory the commission of a crime by the principal. *See United States v. Cline*, 20 C.M.R. 785 (A.F. B.R.1955), *pet. denied* 20 C.M.R. 398 (1955); *United States v. Huff*, 17 C.M.R. 677 (A.F. B.R.1954). In light of these past statements of military law, para. 140*a* (6), Manual, *supra*, need not be interpreted as an inflexible rule of evidence incompatible with the limited use of Perdue's confession in the present case. *See United States v. Smith, supra*. Accordingly, as to the evidentiary issue raised herein, we must now[9] turn to the federal rules of evidence to see if any exclusion to the hearsay rule might

---

8. *See* para. 157, Manual, *supra*; Perkins, *Criminal Law* 578 (1957).

9. No other Manual provision is applicable in the present case. Para. 140*b*, Manual, *supra*, is not controlling because there was no showing Perdue and McConnico were coconspirators or

coaccuseds and in the accomplice situation, no conviction or plea of guilty was sought to be admitted. Para. 145*b*, Manual, *supra*, also is simply not relevant to Perdue's refusal to testify in court.

authorize its admission. *See United States v. Johnson, supra.*

■ With some confusion the Government first attempts to justify the introduction of Perdue's confession against the appellant as a matter of evidentiary law on the basis of the party-admission exception to the hearsay rule. *See McCormick, Law of Evidence* §§ 262–267 (2nd ed. 1972). In particular, it is asserted as a matter of military case law [10] and in accordance with the majority of federal [11] and state [12] decisions that the confession of a principal is admissible on this theory, in the trial of the accessory, to prove the commission of the crime by the principal. *See 4 Wigmore, Evidence* § 1079(1)(c) (Chadbourn rev. 1972). We must reject the application of this exception to the hearsay rule as a matter of fact and law to the appellant's court-martial.

■ The genesis in human experience justifying the party admission exception to the hearsay rule is not that such evidence constitutes a declaration against the confessor's interest. *See id.* at §§ 1048–1049. Rather, this particular exception to the hearsay rule is based on some identity of interest or privity in obligation between the maker of the statement and the party sought to be bound. *See id.* at §§ 1076–1079. Such an identity of interest or mutuality of legal liability is defined in a criminal transaction as a matter of substantive criminal law in the jurisdiction and some evidence of the defendant's cooperation with the principal generally must be furnished by the Government. *Id.* In the present case, the Government suggests in a pro forma manner that the confessor-principal Perdue and the defendant, accessory-after-the-fact McConnico, had a shared interest in the criminal venture of assault with a deadly weapon. No evidence, however, was offered to establish such a joint effort so as to bring Perdue's confession within the ambit of this hearsay exception. *See Hale v. United States,* 25 F.2d 430 (8th Cir. 1928). Moreover, as a matter of military substantive law contained in the UCMJ, we find no support for equating the criminal liability of a principal [13] with an accessory after the fact.[14] In general, this evidentiary theory is employed at courts-martial in situations involving statements made by co-conspirators [15] to a crime while in the course of this conspiracy. *See para.* 140*b*, Manual, *supra.* Accordingly, in the absence of any de jure mutual criminal venture, we decline to expand [16] the proffered exception to the hearsay rule in military practice to the situation involving a principal and an accessory after the fact where no agreement has been shown, as a matter of fact, to commit the principal crime.

The Government later in its brief asserts that the written confession of Perdue is a declaration against his penal interest.[17] Accordingly, it is argued that such hearsay evidence is admissible against the appellant at his court-martial under Rule 804(b)(3), Fed.R.Evid.

The basis of the [declaration against interest exception to the hearsay rule] is "the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examina-

---

10. *United States v. Cline,* 20 C.M.R. 785 (A.F.B.R.1955), *pet. denied* 20 C.M.R. 398 (1955); *United States v. Huff,* 17 C.M.R. 677 (A.F.B.R. 1954).

11. *See Hale v. United States,* 25 F.2d 430 (8th Cir. 1928).

12. *See Stewart v. People,* 161 Colo. 1, 419 P.2d 650 (1966).

13. Article 77, UCMJ, 10 U.S.C. § 877.

14. Article 78, UCMJ, 10 U.S.C. § 878.

15. Article 81, UCMJ, 10 U.S.C. § 881.

16. Notes of the Advisory Committee on Rules, Federal Rules of Evidence, Rule 801, 28 U.S.C.A., p. 531.

17. *See generally,* 5 *Wigmore, Evidence* §§ 1475–1477 (3rd ed. 1940); *Note: Declarations Against Penal Interest: Standards of Admissibility Under An Emerging Majority Rule,* 56 Boston U.L.Rev. 149 (1976).

tion are wanting." 5 Wigmore, Evidence § 1457 (3rd ed. 1940). The inclusion of a declaration against penal interest within this general exception to the hearsay rule is fairly recent as a matter of federal law. The language of the federal rule makes no distinction between such evidence being utilized to exculpate or implicate a criminal defendant except to the extent that corroboration is required in the case of the former. However, it must be noted that its legislative history is somewhat ambiguous as to the propriety of identifying all third-party confessions implicating a defendant as legitimate declarations against penal interest. Notes of the Advisory Committee on Rules, Federal Rules of Evidence, Rule 804, 28 U.S.C.A., p. 697. Such ambivalence stems from the fact that such a confession may be unreliable to the extent that the third-party confessor may curry favor with government authorities by implicating another person in the crime.[18] Yet, in the appellant's case, Perdue's confession was expressly offered by the Government and considered by the military judge on the sole issue of the commission of the principal crime of assault by its maker Perdue. The voluntary circumstances of its making were established by the live testimony of Agent Hart. Perdue refused to testify on the basis of his privilege against self-incrimination. In such a situation, it is most unlikely that such a confession would be unreliable as an attempt by the principal offender to curry favor with government authorities at the expense of the secondary offender McConnico.[19] Accordingly, for this limited purpose, this confession is reliable and admissible against the appellant as a declaration against Perdue's penal interest in accordance with federal evidentiary law applicable at court-martial.

## II

After finding the admission of the challenged confession was in accordance with the rules of evidence applicable at this court-martial, a more significant constitutional question must be addressed. See Dutton v. Evans, supra 400 U.S. at 86, 91 S.Ct. 210. The precise issue[20] is whether the introduction of the extrajudicial confession of Perdue at the appellant's court-martial under a recognized exception to the hearsay rule runs afoul of the latter's rights under the Confrontation Clause of the Sixth Amendment. Cf. Parker v. Randolph, —— U.S. ——, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979); Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965).

The starting point for such an analysis is the observation that the evidence in the present case did not directly identify or implicate the appellant as an accessory after-the-fact. It did, however, tend to establish a vital fact in the government's case against him. No obviation of the appellant's constitutional right to confront the witnesses against him is justified on this ground. See Kirby v. United States, 174 U.S. 47, 55–56, 19 S.Ct. 574, 43 L.Ed. 890 (1899). Yet, it must also be noted, "[t]he Confrontation Clause has never been held to bar the admission into evidence of every relevant extrajudicial statement made by a nontestifying declarant simply because it in some way incriminates the defendant." See Parker v. Randolph, supra 99 S.Ct. at 2139. Accordingly, it is necessary to determine in the appellant's case whether the admissible hearsay possesses the additional "indicia of reliability" required by the Confrontation Clause of the Sixth Amend-

---

**18.** See Notes of the Advisory Committee on Rules, Federal Rules of Evidence, Rule 804, 28 U.S.C.A., p. 697; United States v. White, 553 F.2d 310, 313 n. 4 (2nd Cir. 1977), cert. denied, 431 U.S. 972, 97 S.Ct. 2937, 53 L.Ed.2d 1070 (1977); United States v. Rogers, 549 F.2d 490, 498 n. 8 (8th Cir. 1976), cert. denied, 431 U.S. 918, 97 S.Ct. 2182, 53 L.Ed.2d 229 (1977).

**19.** While Perdue might secure some benefit from the Government for his confession at his own trial, it would be only at the expense of his own conviction.

**20.** See generally, Westen, supra (n. 2) at 582–86, and 613–28.

ment.[21] *California v. Green, supra* 399 U.S. at 161, 90 S.Ct. 1930.

This case is different from the *Bruton*-type cases, because the hearsay statements considered in the appellant's case are admissible against him under a recognized exception to the hearsay rule. Nevertheless, as indicated in *California v. Green, supra* at 156, 90 S.Ct. 1930, this fact does not automatically resolve the confrontation question. Moreover, the Supreme Court was particular in the *Bruton* case in intimating no view whatever that admission of such evidence under "[a] recognized exception to the hearsay rule" would "necessarily raise questions under the Confrontation Clause." *See Bruton v. United States, supra* 391 U.S. at 128 n.3, 88 S.Ct. at 1624. While we agree that "the right to confront [witnesses] and to cross-examine [them] is not absolute," *Chambers v. Mississippi, supra* 410 U.S. at 295, 93 S.Ct. at 1046, it is clear that any permissible restriction of this valuable constitutional right should be based on decisions emanating from the Supreme Court. Admittedly, that Court has held on a case-by-case basis that not all evidence admitted at a criminal trial under a recognized exception to the hearsay rule violated this constitutional provision. *See Dutton v. Evans, supra, California v. Green, supra; Dowdell v. United States,* 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911); *Mattox v. United States,* 156 U.S. 237, 240–244, 15 S.Ct. 337, 39 L.Ed. 409 (1895).[22] However, unlike those cases, the admissible hearsay in the appellant's case was a product of custodial interrogation [*see* Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases,* 91 Harv.L.Rev. 567, 584 fn. 43 and 600 n. 98 (1978)] and the out-of-court de-

clarant was unavailable to testify on the basis of his privilege against self incrimination. *See Parker v. Randolph, supra* 99 S.Ct. at 2146–47 (Stevens, J., dissenting). In light of these considerations and dictum in *Kirby v. United States, supra* 174 U.S. at 55–58, 19 S.Ct. 574, it would be imprudent for this Court to definitively rule that the introduction of Perdue's confession under the circumstances of the appellant's case did not in some way violate the appellant's right to confrontation.[23]

### III

Accepting the argument of the appellant that he was denied the right to confront Perdue on the issue of the latter's commission of the principal crime, it does not automatically follow that his conviction as an accessory after the fact must be overturned. *See Motes v. United States,* 178 U.S. 458, 476, 20 S.Ct. 993, 44 L.Ed. 1150 (1900). Under the facts and circumstances of this court-martial, we conclude there was no reasonable possibility [24] that the admission of this evidence might have contributed to the appellant's conviction. *See United States v. Moore,* 1 M.J. 390, 392 (C.M.A. 1976). The questionable evidence was limited at his court-martial by the military judge to his consideration of the issue of whether the principal Perdue committed a crime. However, the testimony of the two victims of the shooting, Linton and Preyer, along with that of the bystanders, Boyce and Hutchinson uncontrovertibly establish that the offense of assault with a dangerous weapon occurred. Accordingly, the only remaining issue pertinent to this confession was the identity of the principal assailant. The testimony of the above-mentioned witnesses, viewed as a whole, offers

---

**21.** The controlling but somewhat amorphous standard is whether the trier of fact has a satisfactory basis for evaluating the truth of the out-of-court statement. *See* Westen, *supra* (n. 2) at 586.

**22.** *See also* cases cited in Westen, *supra* (n. 2) 601, n. 99.

**23.** I accept this conclusion at the present time without deciding the issue, until more clear

pronouncements in this area of constitutional law reach us from the Supreme Court.

**24.** *See Parker v. Randolph, supra* 99 S.Ct. at 2138, n. 5, citing *Brown v. United States,* 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *Schneble v. Florida,* 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972), *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

sufficient circumstantial evidence to establish a prima facie case that Perdue committed this offense. *See* paras. 74*a*(3), 138*b* and 154, Manual, *supra.* In addition, the testimony of three innocent bystanders, Walters, Downs and Spencer, who were not government investigators, clearly establishes that Perdue, in a spontaneous and immediate post-shooting statement admitted his role as the assailant. Though the latter testimony also constitutes hearsay, it is without question admissible, in court-martial practice, as a spontaneous exclamation. *See* para. 142*b,* Manual, *supra.* Moreover, the circumstances of this admission are quite similar to that in *Dutton v. Evans, supra* 400 U.S. at 89, 91 S.Ct. 210, and more clearly fall within the constitutional purview of that decision. Accordingly, in light of this substantial evidence which independently and properly establishes the commission of the principal crime by Perdue, we find the appellant was not prejudiced by any constitutional error in the admission of the confession. *See Parker v. Randolph, supra* 99 S.Ct. at 2141–43 (Blackmun, J., concurring in part).

Accordingly, the decision of the United States Army Court of Military Review is affirmed.

COOK, Judge (concurring in the result):

I agree with the conclusion in the principal opinion that the other component evidence of Perdue's commission of the offense attributed to him is so compelling of guilt as to foreclose any "reasonable possibility that the admission of . . . [Perdue's written and oral pretrial statements] might have contributed to the appellant's conviction." I am constrained, however, to disassociate myself from the discussion of the admissibility of the statements.[1] First, I believe that admissibility is constitutionally allowable under *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970). Secondly, I am not at all certain

that paragraph 140*a*(6), Manual for Courts-Martial, United States, 1969 (Revised edition), is not a prescribed rule of evidence. The language of the provision as to inadmissibility of a confession or inculpatory admission by one other than the accused is framed as an absolute prohibition. In addition, I believe some comment on the dissent is appropriate. Judge Perry maintains that the written statement by Perdue "constituted the most damaging and devastating evidence concerning McConnico's alleged act of driving Perdue away from the scene of the shooting." The statement was not offered or received for that purpose. Trial counsel presented only that related to Perdue's commission of the offense attributed to him. Nothing said about the accused was offered. The excerpt from the record of trial set out in footnote 7 of Judge Perry's opinion compellingly demonstrates that the recitals as to the accused would be "disregarded" and not "considered" by the trial judge. I believe the trial judge could, and that he did, adhere to his declarations. *See United States v. Montgomery,* 20 U.S.C. M.A. 35, 42 C.M.R. 227 (1970). I am confirmed in that belief by the fact that the defense apparently perceived no risk that the judge would be unable to put aside the unadmitted matter since it did not move for a mistrial, *United States v. Jeanbaptiste,* 5 M.J. 374 (C.M.A.1978), or to withdraw the request for trial by judge alone. *See United States v. Wright,* 5 M.J. 106 (C.M.A. 1978).

For the reason indicated, I join in affirming the decision of the United States Army Court of Military Review.

PERRY, Judge (dissenting):

In the principal opinion, Chief Judge Fletcher holds that "it would be imprudent for this Court to definitively rule that the introduction of Perdue's confession under the circumstances of the appellant's case

---

1. The principal opinion describes the oral statement as a "spontaneous exclamation" and seems to imply that it was, therefore, admissible as an exception to the hearsay rule. *See* para. 142*b,* Manual for Courts-Martial, United

States, 1969 (Revised edition). I do not believe it was admissible as such because the circumstances under which it was made indicate it was not "an impulsive and instinctive outcome of the event."

did not in some way violate the appellant's right to confrontation." And he is willing only to accept, without deciding, "this conclusion at the present time . . . until more clear pronouncements in this area of constitutional law reach us from the Supreme Court."[1] He finds, however, that any violation of McConnico's right of confrontation that may have occurred was harmless, since the record contains other evidence that Perdue committed the principal offense. Continuing, the principal opinion finds that Perdue's confession was "properly admitted against the appellant as a declaration against penal interest in accordance with federal evidentiary law applicable at courts-martial." In his opinion concurring in the result, Judge Cook eschews the underlying rationale of the principal opinion and, indeed, disassociates himself from the discussion concerning the admissibility of the statements. Judge Cook also identifies para. 140a(6), Manual for Courts-Martial, United States, 1969 (Revised edition), as relevant and potentially crucial to the issue presented in this case. However, Judge Cook declines to hold that

the Manual provision is dispositive here, preferring instead to rest his concurrence in the result reached in the principal opinion upon the ground that "other competent evidence of Perdue's commission of the offense attributed to him is so compelling of guilt as to foreclose any 'reasonable possibility that the admission of . . . [Perdue's written and oral pretrial statements] might have contributed to the appellant's conviction.' "

My Brethren seem oblivious to the legal mischief which Perdue's confession has wrought upon McConnico's rights. First, the record reveals no direct evidence, other than Perdue's confession, that McConnico drove Perdue away from the scene of the shooting or that he performed any other act which "receive[d], comfort[ed] or assist[ed]" Perdue "in order to hinder or prevent his apprehension, trial, or punishment."[2] The finding of guilty thus rests upon no direct evidence of the commission by McConnico of acts comprising the elements of the crime if accessory after the fact, absent Perdue's confession.[3] Second, the admis-

1. There are few subjects on which pronouncements by the Supreme Court have been more clear and unambiguous. *See* the discussion *infra* in Part III. Indeed, only a short time ago, the Supreme Court issued its opinion in *Parker v. Randolph,* —— U.S. ——, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979), in which it held that the admission in a joint trial of several defendants of their several interlocking confessions, each implicating the other, did not violate the Sixth Amendment. But the Court distinguished the *Parker* case's facts from those of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Said the Court:

When, as in *Bruton,* the confessing codefendant has chosen not to take the stand and the implicated defendant has made no extrajudicial admission of guilt, limiting instructions cannot be accepted as adequate to safeguard the defendant's rights under the Confrontation Clause.

99 S.Ct. at 2140.

2. McConnico was convicted of the offense of being an assessory after the fact, in violation of Article 78, Uniform Code of Military Justice, 10 U.S.C. § 878, which provides:

Any person subject to this chapter who, knowing that an offense punishable by this chapter has been committed, receives, comforts, or assists the offender in order to hinder or prevent his apprehension, trial, or pun-

ishment shall be punished as a court-martial may direct.

3. *See* the discussion in Part I. It is true that witnesses for the Government placed McConnico at the scene of the altercation and identified McConnico's automobile as the vehicle in which Perdue and an *unidentified* person drove away from the scene of the shooting. However, this testimony, added to other testimony of record that Perdue and McConnico were friends from the same hometown and that Perdue had possession of McConnico's automobile earlier during the day on which the shooting occurred, could support a belief that Perdue drove the automobile away from the scene of the shooting. Even considering a finding that the *unidentified* person was McConnico, that would not constitute proof beyond a reasonable doubt that McConnico aided or assisted Perdue "in order to hinder or prevent his apprehension, trial or punishment." This circumstance could just as easily indicate that McConnico became terror stricken when Perdue shot the other serviceman and ran to his own automobile to leave the scene, lest he be accused of the commission of the offense. *See United States v. Staten,* 189 U.S.App.D.C. 100, 581 F.2d 878 (1978); *Bailey v. United States,* 135 U.S.App. D.C. 95, 416 F.2d 1110 (1969).

The principal opinion states that the record contains evidence, absent Perdue's statement,

sion of Perdue's confession violated para. 139*a*, Manual, *supra*.[4] Third, the admission of Perdue's confession violated para. 140*a* (6), Manual, *supra*.[5] Fourth, admission of Perdue's confession violated McConnico's right, guaranteed by the Sixth Amendment to the Constitution of the United States,[6] to be confronted by the witnesses against him. Thus, I believe error was committed. Moreover, I have no doubt that the admission of the statement was prejudicial. I would, therefore, reverse McConnico's conviction and remand the case for a new trial.

I

McConnico and Perdue were tried separately on charges resulting from an altercation between two groups of servicemen at Fort Benning, Georgia, at which time Perdue shot and injured another serviceman. Perdue was tried first and convicted of the offense of assault with a dangerous weapon. Subsequent to Perdue's trial and conviction, McConnico was brought to trial on the charge of having been an accessory after-the-fact to assault with intent to commit murder, in violation of Article 78, Uni-

which supports McConnico's conviction. However, no mention is made of that evidence and there is good reason my colleagues do not refer to the supporting evidence, for it is nonexistent in the record. I have examined the record and have not found any direct evidence to support the finding of guilty absent Perdue's statement. Moreover, two items of circumstantial evidence do not constitute an unbroken chain which points unerringly to the guilt of McConnico. *See United States v. Jackson,* 7 U.S.C.M.A. 67, 21 C.M.R. 193 (1956) (Quinn, C. J., dissenting). Additionally, the principal opinion finds solace in the fact that we did not grant review on the issue of the sufficiency of the evidence. 3 M.J. 486 (1977). Thus, by decree, the majority renders the absence of supporting evidence a non-issue. That is an amazing observation to me and will be to anyone willing to read the record and canvass the evidence. Oftimes the cursory review of trial records within the statutory period of 30 days precludes the in-depth consideration which we are able to give after review has been granted. My own review of the record now reveals the absence of supporting evidence, absent Perdue's statement. This Court can and should grant relief where the absence of evidence to support a finding of guilty is manifest, as is the case here.

4. Para. 139*a*, Manual for Courts-Martial, United States, 1969 (Revised edition), provides:

A statement which is offered in evidence to prove the truth of the matters stated therein, but which was not made by the author when a witness before the court at the hearing in which it is so offered, is hearsay. The word "statement" means not only an oral or written expression but also non-verbal conduct of a person intended by him as a substitute for words in expressing the matter stated. Hearsay may not be recited or otherwise introduced in evidence, and it does not become competent evidence by reason of a mere failure to object to its reception in evidence. This rule simply means that a fact cannot be proved by showing that someone stated it

was a fact. The basis of the rule is the fundamental principle, which is subject to certain well-established exceptions, that in a criminal prosecution the testimony of the witnesses shall be taken before the court, so that at the time they give the testimony offered in evidence they will be sworn and will be subject to cross-examination, the scrutiny of the court, and confrontation by the accused. Hearsay as defined above includes the testimony of a witness given at the hearing that on another occasion he made a certain statement, if that statement is offered to prove the truth of the matters stated and has not been adopted by the witness as a part of his testimony at the hearing.

The fact that a given statement was made may itself be relevant. If this is so, the making of the statement may be shown by any competent evidence, not for the purpose of proving the truth of what was stated but for the purpose of proving the fact that it was stated.

5. Para. 140*a* (6), Manual, *supra,* states in pertinent part:

A confession or admission not made as testimony in the trial is admissible for the purpose of proving the truth of the matters stated in the confession or admission only when the person who made it is an accused in the case, and it is then admissible for that purpose only with respect to, and against, the accused who made it.

6. U.S.Const. amend. VI, states:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defense.

form Code of Military Justice, 10 U.S.C. § 878. At McConnico's trial, a statement given by Perdue to investigating officers prior to his trial, admitting that he shot the serviceman and stating further that McConnico drove him away from the scene, was admitted by the trial judge over objections that the statement was hearsay and that it violated MConnico's right to be confronted with the witnesses against him, guaranteed by the Sixth Amendment to the Constitution of the United States. The military judge stated that the statement was being admitted for the limited purpose of establishing Perdue's misconduct as the principal offender.[7]

Review of the evidence reveals that during much of the day prior to the shooting incident, Perdue had been driving McConnico's automobile in and around Fort Benning. Shortly before the shooting incident, Perdue and McConnico were observed at the servicemen's club. During a confrontation between two groups of men outside the club, a shot, injuring one serviceman, was fired, after which Perdue and an *unidentified* person got in McConnico's automobile and drove away. Review of the record reveals that no witness testified as to who, Perdue or the other individual, drove the automobile from the scene of the shooting. Nor is there any other evidence of record to support that alleged fact, so essential to the finding of guilty. Moments later, the same automobile arrived at a barracks building some distance away from the shooting scene. No witness testified as to who drove the automobile to the barracks. Thereafter, Perdue, followed by McConnico, approached another serviceman, Hutchinson, and two female companions. Perdue displayed his pistol and admitted shooting a serviceman. An investigating officer testified during the trial that McConnico admitted to him that he (McConnico) was at the

---

7. The military judge read the statement several times and participated in a colloquy with the attorneys during which he referred to the language which would not be considered. The record reflects the following:

MJ  All right. Now, this part in here, you're not concerning the last sentence to the first paragraph on the first page where it reads: "I just hopped in and told him to take me to the barracks, and I just went into the barracks and went to sleep." You're not offering that?

TC  No, sir, we're not, and we're also not offering the previous sentence, "Everybody started running and McConnico ran to his car." We're not offering that either.

MJ  All right. In other words, really what you're offering then is just everything in the first paragraph above that, in substance, right? In other words, the first paragraph beginning with the statement where it says the last sentence—"I know one bullet hit the dude that was rushing me, the other hit another dude; the third one, it didn't hit no one." That's just it; you're not offering anything else?

TC  Your Honor, I'm somewhat confused. Would you start with the first sentence that you perceive?

MJ  I said the beginning of the statement on page one, there's a statement there consisting of several sentences. The last sentence of that statement reads before the questions was asked, "Where did you get the gun?" The last sentence says, "I just hopped in and told him to take me to the barracks and just went into the barracks

and went to sleep,"—you're not offering that at all?

TC  No, I'm not.

MJ  So I will not consider that. You also said you were not offering the one preceding that—"Everybody started running and McConnico ran to his car."—you're not offering that?

TC  That is correct.

MJ  But you're offering the rest of it above that?

TC  Yes, Your Honor.

MJ  All right, the rest of the statement won't be considered then; it will be disregarded. In other words, you're merely offering the offense of assault with intent to commit murder, not having anything to do with leaving the scene or why or possible self-defense, or anything of that nature?

TC  Absolutely.

Of course, trial judges are presumed to have trained and disciplined minds which enable them to distinguish and discard from their minds inadmissible evidence. However, for a judge serving as the trier of the facts to review and discuss the evidence which he has agreed to exclude and which evidence is the single most damaging evidence to the accused, brings to the fore the admonition made by the Court in *United States v. Walker*, 154 U.S.App.D.C. 6, 8, 473 F.2d 136, 138 (1972): "The disciplined judicial mind should not be subjected to any unnecessary strain; even the most austere intellect has a subconscious." *See also Bruton v. United States, supra.*

scene of the shooting. However, McConnico made no statement to the investigating officer that he drove Perdue away from the scene. It is thus apparent that evidence of any activity by McConnico that may have aided or assisted Perdue in avoiding detection, absent Perdue's statement, was circumstantial and inconclusive. Indeed, without Perdue's statement, there was no direct evidence of overt assistance by McConnico[8] and the circumstantial evidence above adverted to does not constitute an unbroken chain which points unerringly to the guilt of the accused. *See United States v. Mason,* 8 U.S.C.M.A. 329, 24 C.M.R. 139 (1957); *United States v. Jackson,* 7 U.S.C.M.A. 67, 21 C.M.R. 193 (1956) (Quinn, C. J., dissenting). Perdue's statement, therefore, constituted the most damaging and devastating evidence concerning McConnico's alleged act of driving Perdue away from the scene of the shooting. It was this alleged conduct by McConnico that constituted the basis upon which the military judge found him guilty of being an accessory after-the-fact of aggravated assault.[9]

The majority insist that the above facts, even absent Perdue's statement, support McConnico's conviction of the charged offense. I disagree. Absent Perdue's statement, the record is devoid of any relevant evidence that McConnico committed conduct prohibited by the statute. Thus, he stands convicted without due process of law. *Vachon v. New Hampshire,* 414 U.S. 478, 94 S.Ct. 664, 38 L.Ed.2d 666 (1974); *Douglas v. Buder,* 412 U.S. 430, 93 S.Ct. 2199, 37 L.Ed.2d 52 (1973); *Gregory v. Chicago,* 394 U.S. 111, 89 S.Ct. 946, 22 L.Ed.2d 134 (1969); *Adderley v. Florida,* 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966); *Thompson v. Louisville,* 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960). As the Supreme Court teaches, "The 'no evidence' doctrine of *Thompson v. Louisville* thus secures to an accused the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty." *Jackson v. Virginia,* —— U.S. ——, pp. —— – ——, 99 S.Ct. 2781 p. 2787, 60 L.Ed.2d —— (1979).

Nevertheless, my colleagues are persuaded that some evidence exists which tends to support the verdict of guilty, notwithstanding its paucity. *See* n. 3, *supra.* That evidence, however, does not constitute proof beyond a reasonable doubt that McConnico "receive[d], comfort[ed] or assist[ed]" Perdue "in order to hinder or prevent his (Perdue's) apprehension, trial or punishment." *See* n. 9, *supra.* *See also In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), in which the Court held that the Constitution protects a defendant in a criminal case from conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364, 90 S.Ct. at 1073. *See also Jackson v. Virginia, supra; Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Ivan v. New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Verdi,* 5 M.J. 330 (C.M.A.1978). The Supreme Court reminds us that "[t]he *Winship* doctrine requires more than simply a trial ritual." That doctrine, the Court teaches, requires "that the factfinder will rationally apply that standard to the facts in evidence." It is recognized that

a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt, and the same may be said of a trial judge sitting as a jury. In a federal trial, such an occurrence has traditionally been deemed to require reversal of the conviction.

*Jackson v. Virginia,* supra —— U.S. at ——, 99 S.Ct. at 2788.

and thereafter that he (2) received, comforted or assisted Perdue (3) in order to hinder or prevent his (Perdue's) apprehension, trial or punishment. *See* Article 78, UCMJ. *See also Bailey v. United States, supra.*

---

8. *See* n. 3, *supra.*

9. To convict, the military judge was required to find beyond a reasonable doubt that McConnico (1) had guilty knowledge that Perdue committed an offense punishable under the Code

*See also Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). I need not remind my colleagues that a court-martial is a federal trial. The facts of record in this case cannot rationally be deemed to constitute proof beyond a reasonable doubt that McConnico committed acts prohibited by Article 78, UCMJ.

Thus, in my view, the military judge either failed to adhere to the limitations he himself imposed upon the consideration of Perdue's statement (*see* n.7, *supra*) or he rendered a finding of guilty against McConnico upon less than proof beyond a reasonable doubt. In either event, McConnico's conviction should not stand.

## II

I agree that the Manual for Courts-Martial is the primary source of the rules of evidence for courts-martial. Article 36(a), UCMJ, 10 U.S.C. § 836. Several provisions of the Manual bear upon the admissibility of Perdue's statement in this case. I will proceed to discuss them together with my views concerning their effect upon the admissibility of Perdue's statement.

A. Paragraph 139*a*, Manual, *supra* provides that hearsay is not competent evidence and that it may not be admitted or considered.[10] Paragraph 139*a* emphasizes that "[h]earsay may not be recited or otherwise introduced in evidence, and it does not become competent evidence by reason of a mere failure to object to its reception in evidence."[11] Hearsay evidence is described as "[a] statement which is offered in evidence to prove the truth of the matters stated therein, but which was not made by the author when a witness before the court."[12] Confirming the reason for imposing the rule in courts-martial, the President emphasized[13]

the fundamental principle . . . that in a criminal prosecution the testimony of the witnesses shall be taken before the

court, so that at the time they give the testimony offered in evidence *they will be sworn and will be subject to cross-examination, the scrutiny of the court, and confrontation by the accused.*

The rule is, of course, subject to certain well-established exceptions.

It cannot be disputed that Perdue's statement establishing his misconduct as the principal offender is a written "statement" which was "offered in evidence to prove the truth of the matters stated therein." Indeed, Perdue's statement established conclusively that Perdue committed the principal offense of which McConnico stands convicted as an accessory after the fact. The crucial fact was for all practical purposes a condition precedent to McConnico's conviction as an accessory after the fact.[14] The statement also contains an assertion that McConnico drove Perdue away from the scene of the shooting. However, the trial judge, who also served as the trier of fact, indicated that he would not consider that part of the statement.[15] The record confirms that Perdue did not testify during McConnico's trial and, thus, as the author of the statement, did not make it "when a witness before the court." Thus, Perdue's statement is hearsay, both inadmissible and incompetent as evidence under para. 139*a*, Manual, *supra,* unless otherwise admissible, as is contended by my colleagues.

B. Paragraph 140*a*(6), Manual, *supra,* provides[16] that

[a] confession or admission not made as testimony in the trial is admissible for the purpose of proving the truth of the matters stated in the confession or admission only when the person who made it is an accused in the case, and it is then admissible for that purpose only with respect to, and against, the accused who made it.

---

10. *See* n. 4, *supra.*

11. *Id.*

12. *Id.*

13. *Id.* (emphasis added).

14. *See* n. 9, *supra.*

15. *See* n. 7, *supra. See also Bruton v. United States, supra.*

16. *See* n. 5, *supra.*

Perdue was not an accused in the case on trial. McConnico was on trial. The wording of this Manual provision is, I suggest, plain and unambiguous. It prohibited consideration of Perdue's confession at McConnico's trial. In his separate opinion, Judge Cook seems to agree that this provision of the Manual prohibited consideration of Perdue's confession at McConnico's trial. However, in Judge Cook's view, the admission of Perdue's statement had no effect on the outcome of the trial since there was other substantial evidence on which the findings of guilty could have been made. As I have stated above, the evidence of conduct by McConnico was, at best, circumstantial and inconclusive. Perdue's statement constituted the only direct evidence of conduct by McConnico which arguably supports the finding of guilty of accessory after the fact. Thus, in my view, admission of Perdue's statement violated para. 140a(6), Manual, *supra.*

C. Though only tangentially relevant to this case, para. 140b, Manual, *supra,* relating to the trial of two or more persons, provides that

> evidence of a statement made by one of them which is admissible against him only or against him and some, but not all, of his co-accused may not be received in evidence unless all references inculpating an accused against whom it is inadmissible are effectively deleted or the maker of the statement becomes subject to relevant cross-examination.

While this was not a joint trial, it was a trial of McConnico for the crime of being an accessory after the fact of a crime, the commission of which Perdue had admitted in a statement which also inculpated McConnico. Even if the two men had been tried jointly, the statement would have been admissible only against Perdue *after* all references inculpating McConnico had been "effectively deleted." The effective deletion of inculpating references to McConnico must be accomplished by the prosecution before displaying the statement to the fact finders. In this case, the trial was held before a military judge alone. Admittedly, the judge stated that he would not consider that portion of the statement which asserted that McConnico drove the automobile from the shooting scene.[17] However, the record contains several discussions between the judge and the attorneys concerning the disputed reference to McConnico.[18] In my view, even if otherwise admissible, this Manual provision required deletion of all reference to McConnico *before* displaying it to the fact finder.

### III

The Sixth Amendment to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[19] The principal opinion recognizes the existence of the Amendment but submerges it beneath the declaration of penal interest exception to the rule against hearsay evidence and "federal evidentiary law," thus depriving military servicemen and women of its protections.[20] A canvassing of relevant deci-

---

17. *But see* n. 14, *supra.*

18. *Id.*

19. *See* n. 6, *supra.*

20. Article 36(a), UCMJ, 10 U.S.C. § 836(a), provides:

> The procedure, including modes of proof, in cases before courts-martial . . . and other military tribunals may be prescribed by the President by regulations which shall, so far as he considers practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but

which may not be contrary to or inconsistent with this chapter.

Pursuant to Article 36(a), the President has promulgated the provisions of the Manual for Courts-Martial which contain the provisions above enumerated at notes 4 & 5, which I deem applicable to the admissibility of Perdue's statement. Where, as here, the Manual contains rules concerning the admission of evidence, the Manual is the sole authority concerning the admissibility of evidence in courts-martial. The Federal Rules of Evidence are not at this time applicable to courts-martial. *See* Fed.R.Evid. 1101(a). Thus, the majority's reliance upon Fed.R.Evid. 804(b)(3) is impermissible. It is true that we referred to Fed.R.Evid.

sions of the Supreme Court immediately reveals the unique protections afforded by the confrontation clause to the accused. In *Mattox v. United States,* 156 U.S. 237, 15 S.Ct. 337, 39 L.Ed. 409 (1895), the Court stated:

> The primary object of the [Confrontation Clause of the Sixth Amendment] was to prevent depositions or *ex parte* affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.

*Id.* at 242–43, 15 S.Ct. at 339. Seventy years later, in a decision holding the protections of the Sixth Amendment applied to state criminal proceedings under the Fourteenth Amendment, the Court stated:

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation . . . is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.

*Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). The Court has remained steadfast in its recognition of the basic right which the amendment was designed to protect. *Barber v. Page,* 390 U.S. 719, 721, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). As Chief Justice Burger only recently emphasized in *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974):

"Our cases construing the [confrontation] clause hold that a primary interest secured by it is the right of cross-examination." *Douglas v. Alabama,* 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965).

Continuing, Chief Justice Burger stated:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i. e.,* discredit, the witness.

*Davis v. Alaska, supra* at 316, 94 S.Ct. at 1110. The Supreme Court has remained steadfast in its adherence to the concept that the right of confrontation includes the right to cross-examine the witnesses. *See Davis v. Alaska, supra; California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970); *Roberts v. Russell,* 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968); *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); *Barber v. Page, supra; Smith v. Illinois,* 390 U.S. 129, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968); *Brookhart v. Janis,* 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); *Douglas v. Alabama, supra; Pointer v. Texas, supra; Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *Salinger v. United States,* 272 U.S. 542, 47 S.Ct. 173, 71 L.Ed. 398 (1926); *Dowdell v. United States,* 221 U.S. 325, 31 S.Ct. 590, 55 L.Ed. 753 (1911); *Motes v. United States,* 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); *Kirby v. United States,* 174 U.S. 47, 19 S.Ct. 574, 43 L.Ed. 890 (1899); *Reynolds*

804(b)(3) in *United States v. Johnson,* 3 M.J. 143 (C.M.A.1977), in holding that the trial judge erred in refusing to admit Tanner's incriminating statement at Johnson's trial. But Johnson himself offered Tanner's statement. Moreover, our holding in *Johnson* was predicated principally upon *Chambers v. Mississippi,* 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297

(1973), and cognate cases which hold that as a matter of due process, a defendant has the right to defend against the state's accusations and that Johnson could, therefore, utilize Tanner's confession as defense evidence notwithstanding a Mississippi rule of evidence to the contrary.

*v. United States,* 98 U.S. 145, 25 L.Ed. 244 (1879).

It is true that the Supreme Court has affirmed convictions in two cases cited in the principal opinion, where out-of-court declarations of witnesses, inculpating the accused, were admitted at trials. In *California v. Green, supra,* the Court affirmed Green's conviction, based in part upon the prosecutor's use, over Green's objection, of a witness' preliminary-hearing testimony to "refresh" his memory while testifying for the state during Green's trial for the sale of marihuana. The witness had testified at the preliminary hearing that he had obtained marihuana from the backyard of Green's parents' home and had given the money from its sale to Green. At that preliminary hearing, Green's attorney (the same lawyer who represented Green at his trial), fully cross-examined the witness. In accordance with a California statute,[21] the trial judge permitted the prosecutor to utilize the preliminary-hearing transcript by reading certain portions of the witness' preliminary hearing testimony in the presence of the jury, causing the witness to admit that, at the preliminary hearing, he did in fact inculpate Green as the transcript of that hearing confirmed. The Supreme Court found no violation of Green's right of confrontation because the witness did in fact testify at Green's trial and was subject to full cross-examination by Green's attorney. The Court specifically concluded "that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective cross-examination." *Id.* 399 U.S. at 158, 90 S.Ct. at 1935. And in *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970), the Court found no denial of Evans' right of cross-examination where a Georgia trial judge, in obedience to Georgia's co-conspirator exception to the rule against hearsay evidence, permitted a witness to testify concerning an incriminating reference to Evans made to the witness by a co-conspirator of Evans while the co-conspirator and the witness were prison cellmates. The co-conspirator, Williams, was one of several accomplices of Evans during the murders of three Georgia policemen. Williams made the out-of-court statement to the witness under circumstances which the trial court concluded to be in furtherance of the conspiracy. Thus, the statement was admissible under Georgia's co-conspirator rule. Mr. Justice Stewart noted that 20 witnesses testified for the prosecution and that Evans' attorney was provided full opportunity to cross-examine each of them, including one of Evans' co-defendants, Truett, who testified in detail concerning the killing of the three policemen. The witness' testimony as to the out-of-court statement by Williams, the co-conspirator, was, in the Court's view, of only "peripheral significance at most, [and] was admitted in evidence under a co-conspirator exception to the hearsay rule long established under state statutory law." *Id.* at 87, 91 S.Ct. at 219. The Court concluded that application of the Georgia statute in the circumstances of that case did not violate the Constitution. The witness' testimony was not "crucial" or "devastating" evidence concerning Evans' participation in the murders which, the Court observed, had been "abundantly established by Truett's testimony and by Williams' prior conviction." *Id.* at 88, 91 S.Ct. at 219.

Thus, in both cases relied upon by the majority, the Supreme Court upheld the admission of evidence in state prosecutions, pursuant to state statutes, which, under the peculiar circumstances of each case, were held not to violate the right of confrontation. Neither case is similar to this case. Moreover, in each case, the Court reiterated

21. Cal.Evid.Code § 1235: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770." This latter section "requires that the witness be given an opportunity to explain or deny the prior statement at some point in the trial. *See* Cal.Evid.Code § 770 (1966); *People v. Johnson,* 68 Cal.2d 646, 650 n. 2, 68 Cal.Rptr. 599, [602 n. 2,] 441 P.2d 111, 114 n. 2 (1968), *cert. denied,* 393 U.S. 1051, 89 S.Ct. 679, 21 L.Ed.2d 693 (1969)." 399 U.S. 149, 150 n. 1, 90 S.Ct. 1930, 1931, 26 L.Ed.2d 489 (1970).

the time-honored concerns of the Sixth Amendment. In *California v. Green, supra,* 399 U.S. at 158, 90 S.Ct. at 1935, Mr. Justice White found "good reason to conclude that the Confrontation Clause is not violated by admitting a declarant's out-of-court statements," as was done at Green's trial pursuant to the California Evidence Code, so long as the declarant is testifying as a witness and subject to full and effective cross-examination. Significantly, he noted that the conclusion he reached was supported by comparing the purposes of confrontation with the alleged dangers of admitting an out-of-court statement.

> Confrontation: (1) insures that the witness will give his statements under oath—thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, "the greatest legal engine ever invented for the discovery of truth"; (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.

*Id.* The Court found that the appearance of the declarant (Porter) on the witness stand, provided Green the opportunity to test the out-of-court statement against the above-stated concerns of the Sixth Amendment's right of confrontation. And in *Dutton v. Evans, supra,* the Court found no violation of the right of confrontation under the peculiar circumstances of that case in view of the fact that the case did not involve evidence in any sense "crucial" or "devastating." Moreover, the Court observed that the witness was vigorously and effectively cross-examined and that the testimony, in any event, was of peripheral significance at most and was admitted under Georgia's co-conspirator exception to the hearsay rule. Said the Court, "The Georgia statute can obviously have many applications consistent with the Confrontation Clause, and we conclude that its application in the circumstances of this case did not violate the Constitution." 400 U.S. at 87–88, 91 S.Ct. at 219. But neither case supports the admission of Perdue's statement in the instant case. The majority's reliance upon those cases is, therefore, misplaced. No statute or rule permitted the admission of Perdue's statement. Moreover, admission of the statement was prohibited by the provisions of the Manual for Courts-Martial above discussed, and by the Sixth Amendment to the Constitution of the United States.

For the reasons set forth above, I would reverse the decision of the Court of Military Review, and would permit a rehearing if the appropriate authority deemed it practicable.