**UNITED STATES, Appellee,**

v.

**George W. DILLON, Seaman Recruit, U.S. Navy, Appellant.**

No. 44,193.
NMCM No. 80–2842.

U.S. Court of Military Appeals.

Aug. 6, 1984.

For Appellant: *Lieutenant Commander Georgia L. Winstead,* JAGC, USNR (argued).

For Appellee: *Lieutenant Commander John B. Holt,* JAGC, USN (argued); *Commander W. J. Hughes,* JAGC, USN, and *Lieutenant Anita M. Fulton,* JAGC, USNR (on brief); *Major Charles Wm. Dorman, USMC.*

*Opinion of the Court*

EVERETT, Chief Judge:

In May, 1980, appellant was tried by a general court-martial composed of officer and enlisted members and was convicted of unauthorized absence, involuntary manslaughter, and attempted use and transfer of cocaine, in violation of Articles 86, 119, and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 919, and 880, respectively. His sentence to a bad-conduct discharge, confinement, and forfeiture of $400.00 pay per month for 4 years was approved by the convening authority.

Initially, the United States Navy-Marine Corps Court of Military Review held that, on his own initiative, the military judge should have instructed the court members

on the defense of honest mistake of fact, in light of evidence clearly raising that issue concerning the manslaughter charge. Consequently, the court set aside appellant's conviction of that offense in an unpublished opinion dated January 29, 1982. However, the court, in later reconsidering and reversing its decision, stated in an unpublished opinion dated June 29, 1982:

Our prior decision was mistaken, however, precisely because our attention was diverted to that aspect of the instruction which was, in fact, merely surplusage. Upon reconsideration, we are convinced that the elemental requirements for the members to find that appellant attempted to perpetrate a transfer of cocaine which was the proximate cause of the death of [P] was not lessened by the inclusion of the superfluous language. Under the circumstances, the instruction was adequate to define the offense charged, and no instruction on mistake of fact was compelled by the evidence adduced, in view of the type of involuntary manslaughter alleged.

*Id.* at 3.

The Court of Military Review also determined that the attempted-transfer-of-cocaine and involuntary-manslaughter charges were not multiplicious for sentencing purposes, because the two offenses had violated different societal norms and therefore were separately punishable. *Contra State v. Thomas*, 118 N.J.Super. 377, 288 A.2d 32, 34 (1972) (holding that where seller of heroin is convicted of both the sale, and manslaughter for the purchaser's death upon using the heroin, the conviction of both cannot stand: the sale "was an essential element of the manslaughter and must therefore be considered an included offense."). Finally, the court below considered whether the military judge should have allowed a defense witness to testify to a certain exculpatory statement which appellant claimed should have been admitted as a declaration against penal interest. It held

that the out-of-court statement was contrary to the penal interests of the declarant, but the statement was inadmissible because of lack of corroborating evidence to indicate the trustworthiness of the statement. Corroboration is required when a declaration against penal interest is presented to exculpate an accused. *United States v. McConnico*, 7 MJ 302, 308 (CMA 1979).

Unpublished opinion on reconsideration at 4. The court below then affirmed the findings and sentence as approved by the convening authority.

Subsequently, we granted review of the following issues:

### I

WHETHER THE MILITARY JUDGE COMMITTED PREJUDICIAL ERROR BY REFUSING TO PERMIT THE DEFENSE TO PRESENT TO THE MEMBERS, THROUGH THE TESTIMONY OF CHANEY, THE VICTIM'S STATEMENT THAT HE POSSESSED COCAINE WHICH HE RECEIVED FROM AN INDIVIDUAL OTHER THAN THE ACCUSED.

### II

WHETHER IT WAS ERROR FOR THE MILITARY JUDGE TO FAIL TO INSTRUCT *SUA SPONTE* ON THE ISSUE OF HONEST MISTAKE OF FACT AS IT [A]FFECTS THE CHARGE OF INVOLUNTARY MANSLAUGHTER.

### III

DID THE MILITARY JUDGE PROPERLY INSTRUCT THE MEMBERS THAT THE ATTEMPTED TRANSFER OF COCAINE WAS AN OFFENSE AFFECTING THE PERSON OF THE DECEDENT?

### IV

IS IT PERMISSIBLE TO REQUIRE CORROBORATION OF A DECLARATION AGAINST PENAL INTEREST OFFERED TO EXCULPATE AN ACCUSED IF SUCH CORROBORATION

IS NOT REQUIRED FOR THE ADMIS-SIBILITY OF A DECLARATION AGAINST PENAL INTEREST OF-FERED TO INCRIMINATE AN AC-CUSED? SEE MRE, Rule 804(b)(3).

### Issue III

In light of this Court's decision in *United States v. Sargent*, 18 M.J. 331 (C.M.A. 1984), the third granted issue is decided in appellant's favor. Dillon was charged with involuntary manslaughter in this language:

In that ... Dillon, ... on active duty, did, on board USS NEW ORLEANS (LPH-11), on or about 20 October 1979, while attempting to perpetrate an of-fense directly affecting the person of Aviation Boatswain's Mate (Aircraft Handling) Joseph J. Pilotti, Junior, U.S. Navy, to wit: wrongful transfer of co-caine, unlawfully kill the said Pilotti by transferring to him the substance dibu-caine which caused his death when the said Pilotti injected the dibucaine into his body.

Concerning the language of that statuto-ry provision, we stated in *Sargent*:

[T]he statutory phrase "affecting the person" uses the word "person" not only to refer to an individual—as distin-guished from society in general—but also to mean the physical "person" of the individual. The presence of the word "directly" in Article 119(b)(2) supports such an interpretation and indicates that Congress intended involuntary man-slaughter to be a crime narrower in scope than it had been in military law before enactment of the Code. In light of that intent, the sole act of selling ... [a drug] to someone who then overdoses and dies would seem inadequate alone to sustain a conviction under Article 119(b)(2).

\* \* \* \* \* \*

Thus, so far as we can determine, there is no civilian precedent for the proposition that the mere sale of a drug is an offense "directly affecting the per-son" of the purchaser. In view of this dearth of precedent to support such an interpretation of the statutory language in Article 119(b)(2), the precedents point-ing in the opposite direction, and the legislative history of that article, we con-clude that a conviction for involuntary manslaughter cannot be sustained solely by evidence that an accused sold some-one a drug and that the purchaser later died from an overdose of that drug. On the other hand, when the seller has gone further and assisted the purchaser in in-jecting or ingesting the drug, the sale becomes one which does directly affect the person for purposes of Article 119(b)(2). Furthermore, because assist-ing someone to inject or ingest a drug constitutes aiding and abetting use of the drug and because such use is "an offense directly affecting the person," this pre-requisite for Article 119(b)(2)'s applica-tion is present under those circumstanc-es.

*Id.* at 337, 338 (footnotes omitted). Here, the prosecution was also based on Article 119(b)(2), but the Government's evidence only showed that appellant transferred to decedent a substance they both believed to be cocaine. Although there was some evi-dence that Pilotti, the decedent, injected Dillon with this substance, the Government presented no evidence even tending to show that Dillon had assisted the decedent in injecting or ingesting the substance be-lieved to be cocaine.[1] On the contrary, the evidence was uncontradicted that the dece-dent alone divided the powder on a mirror with a razor blade; mixed the powder in a spoon; and injected it twice into his own arms without any assistance from appel-lant. Pilotti then began convulsing and later died of acute cardio-respiratory fail-ure due to dibucaine intoxication. Under *Sargent*, these facts alone cannot sustain Dillon's conviction for involunary man-

---

1. Actually, the substance turned out to be dibu-caine and not cocaine.

slaughter under Article 119(b)(2), so his conviction therefor must be set aside.[2]

### Issues I and IV

#### A

The defense called Aviation Boatswain's Mate Third Class Ralph Chaney as a witness. He testified that previously he had been stationed aboard the USS NEW ORLEANS with Pilotti, that he "knew him pretty well," and that they "were fairly close." They had gone "through basic ... and advanced training together"; and Chaney had "lived with him in three or four different places." As a result of their friendship, Chaney knew that Pilotti habitually used drugs and had a serious drug problem. "He liked to smoke pot, cocaine, speed, probably just about anything you'd give him, he'd take." Then, the witness testified that he had even "turned him in once" in order to help him. On July 18, 1979, Chaney detached from the NEW ORLEANS, but he returned on October 19, 1979. At this time, he saw Pilotti "in primary control up above the flight deck level," and "[h]e seemed pretty—kind of happy that he was getting off restriction."

When Chaney then began to testify, "[h]e told me that—," trial counsel quickly objected on the basis of hearsay. The military judge then asked defense counsel, "What's the purpose of the question?" Counsel replied:

> Your Honor, the defense contends that the statement which is about to be elicited is not hearsay, that it further delves into the background of Airman Pilotti's drug usage, the fact that his familiarity with drugs was a day-to-day routine thing. *When he spoke about drugs, all kinds of drugs, it was an ordinary part of his everyday conversation.* The defense feels that based on what has gone beforehand in the Government's case, that that is completely open.

(Emphasis added.)

At a side-bar conference that followed, defense counsel further stated:

> [T]he witness is expected to state that at the time of this conversation that Airman Pilotti told him that as late as the day before he had received some cocaine from a person on the ship named Inselmann and that he intended to sell that cocaine for Inselmann over the weekend and meet Inselmann on Sunday in order to pay him. The defense contention is that that is not hearsay, that it tends to show his familiarity with drug routine and his familiarity with cocaine, *that it was a part of his everyday existence* and the defense feels that the members are entitled to hear that and evaluate it for what it's worth.

(Emphasis added.)

However, trial counsel contended that the only relevance of Pilotti's statement that he obtained cocaine from Inselmann for sale was to suggest to the court members that Pilotti was in possession of cocaine from a source other than Dillon. On this basis, the statement was inadmissible, because it would serve no purpose other than to prove the truth of the matter asserted therein. The military judge sustained trial counsel's objection and refused to admit the statement as evidence.

Thereafter, Chaney again testified that at one time he had turned Pilotti in for drug use and had done so in order to help him. Chaney explained that he had talked about Pilotti's drug problem to the flight-deck lieutenant, whom he had told that Pilotti "need[ed] some help." However, this officer replied that the matter would have to wait, because "[t]he drug representative for the ship ... was on leave." Then Pilotti was absent from the ship without leave for two months; and when he returned, "it was obvious he still needed help." Chaney recalled that, "instead of [immediately] sending ... [Pilotti] to [drug] rehabilitation," the command had placed him on restriction. When Chaney came back to the NEW ORLEANS on October 19, 1979, and saw Pilotti on the flight deck,

---

2. Dismissal of the involuntary manslaughter charge obviates the necessity to decide the second granted issue.

he could not tell whether he was under the influence of drugs at that time; but Pilotti "usually was in some way speeded up."

B

At trial no reference was made to the declaration-against-penal-interest exception to the hearsay rule, *see* Fed.R.Evid. 804(b)(3) and Mil.R.Evid. 804(b)(3).[3] However, appellate defense counsel now contend that Pilotti's statement to Chaney— namely, that he possessed cocaine which he intended to sell for Inselmann over the weekend—qualified as a statement against penal interest and so should have been admitted into evidence by the military judge. Furthermore, appellant claims that he was prejudiced because the court members were denied the opportunity of knowing from this statement that the drug which Pilotti had ingested could have been obtained from Inselmann, rather than from Dillon. Therefore, if the statement had been admitted, the court members not only might have acquitted Dillon of involuntary manslaughter but also even of the attempted transfer and use of cocaine.

 Because the trial judge was not apprised of this theory of admissibility, we are reluctant to reverse on the basis of the claimed error. More importantly, we conclude that Pilotti's alleged statement did not qualify as a declaration against penal interest. While there may be some debate about the requirements for such a declaration, clearly the offered statement must be in some way damaging or disserving to the declarant and of such a character that he would not have made it unless it was true. However, numerous circumstances make evident that Pilotti would have perceived his statement as entirely innocuous.

If he had thought that he might be subjecting himself to any criminal liability, obviously he would not have made the statement to Chaney—who once before had

turned him in to the flight deck lieutenant because of his involvement with drugs. Also, at the time Pilotti made the statement, he was on restriction for drug use and drug involvement; and presumably, under those circumstances, a person would not talk freely about selling drugs, unless he were sure that his comments would have no adverse repercussions.

Robert Johnson, who had been Assistant Chief Master-at-Arms aboard the NEW ORLEANS, testified that it was more or less understood or implied that Pilotti "had a problem" and everyone was to keep "hands off" him until he finished drug rehabilitation, which had been scheduled. Johnson also testified that, even though Pilotti was on restriction, it was "scuttlebutt" aboard the NEW ORLEANS that he was using drugs every day; and Johnson knew that on any given day Pilotti would possess and use some drugs. Thus, Pilotti himself probably was aware that at the time the naval authorities were not interested in prosecuting him, but only in his rehabilitation; and with such an awareness he would have been even less likely to believe that the remark to his friend Chaney during a casual conversation constituted a declaration against his penal interest.

According to various defense witnesses, Pilotti supported his drug habit by selling drugs. Therefore, the alleged statement probably was self-serving, because by telling Chaney that he had obtained drugs from another person for purposes of sale, Pilotti really was spreading the word that he had merchandise available for purchase.

Even trial and appellate defense counsel have provided only meager support for the contention that Pilotti's statement constituted a declaration against his penal interest. For example, in arguing for the admission of the statement made to Chaney, trial defense counsel observed that when Pilotti spoke about drugs, "it was an ordi-

---

**3.** At the time of trial, the Military Rules of Evidence had not yet taken effect. However, in *United States v. Johnson*, 3 M.J. 143, 146 n.3 (C.M.A. 1977), this Court held that Fed.R.Evid. 804(b)(3) applied to trials by court-martial.

Subsequently, this Rule was adopted "without change" by the new Military Rules. *See* Analysis of Military Rule of Evidence 804(b)(3), Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition).

nary part of his everyday conversation." This hardly sounds like a declaration against penal interest.

Significantly, defense counsel never claimed at trial that Pilotti's statement constituted such a declaration; instead, he argued that the statement was admissible because "it tend[ed] to show his familiarity with drug routine and his familiarity with cocaine." A person so intimate with drugs would scarcely have believed that he was making a declaration against penal interest when he mentioned to a friend that he had drugs for sale. Indeed, the brief of appellate defense counsel acknowledges that "Pilotti might not have readily perceived the disserving character of what was said nor have expected his words to be repeated to the authorities."

In sum, Pilotti's statement simply did not meet the most basic requirement of the penal-interest hearsay exception—namely, that declarant perceive that his statement is against his penal interest. Because the statement to Chaney was not a declaration against Pilotti's penal interest, we need not consider whether such a declaration must be corroborated when the evidence is offered to exculpate an accused.[4]

## III

The decision of the United States Navy-Marine Corps Court of Military Review is reversed as to Charge II and its specification and the sentence. The findings of guilty of Charge II and its specification are set aside and Charge II and its specification are dismissed. The record of trial is returned to the Judge Advocate General of the Navy for remand to the Court of Military Review for reassessment of the sentence based on the affirmed findings of guilty.

Judge FLETCHER concurs.

COOK, Senior Judge (concurring in part and dissenting in part):

Because the time of termination of my duties as a member of this Court draws nigh, I am unable to prepare a more definitive response. Hence, I must content myself with the following observations concerning the discussion of Issue III in the majority opinion:

1. The majority has found legal sustenance in several civilian precedents concerning the application of similar facts to statutes defining murder during the commission of a felony. I find such precedents of little direct application since even a statute defining "murder" when committed during the commission of any felony (as contrasted to only certain enumerated felonies as in Article 118(4), Uniform Code of Military Justice, 10 U.S.C. § 918(4)), requires a finding of sufficient evidence of flagrant disregard for the victim or society at large as to substitute for or transfer the element of malice necessary to convict of murder. *See Napier v. State*, 357 So.2d 1011, 1014 (Ala. 1978); *Commonwealth v. Bowden*, 456 Pa. 278, 309 A.2d 714 (1973); *State v. Dixon*, 109 Ariz. 441, 511 P.2d 623, 625 (1973). In view of the severe penalties possible for conviction of murder, there is no doubt a reason for such limited interpretation of the relevant statutes. *See Annot.*, 50 A.L.R.3d 397 (1973).

2. I disagree with the statement that "there is no civilian precedent for the proposition that the mere sale of a drug is an offense 'directly affecting the person' of the purchaser." 18 M.J. 340, 342. While I find no statute exactly mirroring Article 119(b)(2), UCMJ, 10 U.S.C. § 919(b)(2), there are precedents involving other manslaughter statutes that are sufficiently on point to belie the import of the quoted statement.

---

**4.** This requirement is present in both Federal Rule and Military Rule 804(b)(3). Appellate defense counsel contend that such a requirement, applicable only to an accused, violates Article 46 of the Code, 10 U.S.C. § 846, and the 6th Amendment, both of which seek to assure

equal access to evidence. The Government replies that the Rule merely reflects general experience as to the unreliability of certain statements purportedly against penal interest when offered without corroboration to exculpate an accused.

In *State v. Thomas*, 118 N.J.Super. 377, 288 A.2d 32 (1972), cited by the majority, the defendant was convicted of unlawful sale and possession of heroin and manslaughter for the death of a purchaser. He contended that he could not be held criminally liable for the user's death since the user voluntarily administered the overdose to himself. The court held otherwise:

> We are satisfied that there can be imputed to defendant either knowledge or reckless disregard of the consequence of his act, and that the jury could have reasonably found from the proofs that beyond a reasonable doubt the regular, natural and likely consequence of the sale of heroin was the user's death.

> The act of the user in administering the drug to himself we consider at most to be a concurrent rather than an independent intervening cause. Moreover, defendant was a user as well as a seller of heroin. He must have been aware of an addict's unreasoned craving for the drug.

*Id.* 288 A.2d at 34.

3. I adhere to my position in *United States v. Moglia*, 3 M.J. 216 (C.M.A.1977), that transfer of an inherently dangerous drug under circumstances indicating subsequent use of the same drug by the deceased, is an offense "directly affect[ing] the person of the deceased." *Id.* at 217. The instant case is even stronger, in my opinion, than *Moglia*. Here, unlike *Moglia*, there was evidence that appellant was actually present when the deceased injected himself with the dibucaine. In addition, there was evidence that appellant allowed himself to be injected by the deceased with the same substance—this I take to be an act by appellant strongly supportive of the deceased's own use of the drug. Thus, there was evidence that appellant actively aided and abetted "an offense ... directly affecting the person" of the deceased. Article 119(b)(2). Therefore, the evidence was sufficient to support the trial court's findings.

4. With respect to the discussion of Issues I and IV in the majority opinion, I need go no further than to state my agreement that trial defense counsel's failure to articulate the theory now advanced for the admissibility of the "declaration-against-penal-interest" evidence waived any potential appellate error.