DECISION
CARPARELLI, Judge:
The appellant has been convicted of rape.[1]
[2]Appellate defense counsel argue, *450 inter alia, that two admissions made by appellant were accepted in evidence without sufficient corroboration and that testimony regarding hearsay statements made by one of appellant’s co-actors was admitted contrary to the rules of evidence and the Confrontation Clause of the Sixth Amendment. Having considered all the errors asserted, we affirm. The facts before us are as follows.
The victim, Airman K.P., testified that she became extremely intoxicated in appellant’s barracks room while playing cards with appellant, Airman Pasetti (appellant’s roommate), Airman Hawks (appellant’s neighbor in the barracks), and Airman Coleman (the victim’s female friend). The card game required the loser of each hand to take a drink of bourbon. Airman K.P. stated that she remembered the end of the card game and then repeatedly throwing the cards in the air. She stated there was no romancing or flirtation before, during, or after the game. The next thing she recalled was waking up in a bed in the same room and finding Airman Hawks having intercourse with her. She stated she was confused at first and reacted to Hawks’ comments and overtures by responding with approval. However, upon regaining her full awareness she started to cry and entreated him to stop. When he complied she got up, dressed and left the room. She went next door to find Airman Coleman and encountered Airman Pasetti. She was crying and expressed her anger at Pasetti. She then departed the barracks. She testified that she was sure that Hawks had intercourse with her and that she felt that Pasetti had done so also. She had no knowledge or belief regarding whether the appellant had sexually molested her.
The prosecution presented a stipulation of fact indicating that the group had drunk more than a quart of bourbon during the card game. They also presented two stipulations of expected testimony: one regarding a rape protocol examination of the victim and another containing a psychiatrist’s comments regarding alcohol intoxication and resultant confusion, disorientation, arousable stupor and blackout. Airman Coleman and Airman Gomez, a resident of the same barracks, also testified. Over defense objection, Gomez testified that, in the timeframe described by the victim, he was approached by Airman Pasetti in the hall of the barracks. Pasetti said, “Hey Gomez, do you want an easy f_?” Pasetti told Gomez that he had a girl in his room and he “was switching on her.” According to Gomez, Pasetti told him about the two women and said that they had gotten “pretty well drunk.” Gomez was permitted to testify that Pasetti stated that Airman K.P. had initially insisted that others leave the room before she would engage in sexual foreplay with Pasetti but that she said nothing when appellant entered the room and took pictures of them while Pasetti was having intercourse with her. Gomez testified further that Pasetti told him that, when he had finished, he put his hand in the victim’s vagina and that, without her knowing it, “they” surreptitiously replaced Pasetti’s hand with the hand of one of the other participants. Pasetti said he then left the room and got Gomez.
Gomez was also able to testify as to his own observations. Through the opened door of the room he saw Hawks kneeling and watching something in the darkened room. Hawks asked Gomez, “Are you going to f_ her?” When Gomez replied that the situation was sick, Hawks shut the door. Pasetti said, “Wouldn’t it be funny if she knew Hawks was screwing her because she [doesn’t] like black guys.” Pasetti then told Gomez that he had tried, without success, to find Paskell, another barracks resident, in order to offer him the opportunity to participate.
At that time Gomez saw the appellant walk out of the room naked carrying his pants and his camera. The appellant remarked to the effect that the situation was “wild.” Gomez asked, “Does she know what’s going on?” and the appellant replied, “She’s moaning, I guess she does.” Gomez then saw Airman Coleman come out of the next room and ask where Airman K.P. was. Appellant and Pasetti both indicated that she had left the barracks. *451 When Coleman started to go toward the door to Pasetti’s room, Pasetti intercepted her and kept her outside the room.
In a statement to the Air Force Office of Special Investigations (AFOSI) and in testimony at Pasetti’s trial, appellant admitted that he participated in the card playing and drinking before the incident. In his testimony he also admitted taking pictures of Pasetti and Airman K.P. while the two were having intercourse. In both his statement to AFOSI and his testimony at Pasetti’s trial, he admitted entering the room, undressing, having intercourse with Airman K.P. and seeing Airman Hawks as he (appellant) departed the room. In both statements, however, appellant asserted that, although Airman K.P. said nothing to him while he was in the room before and after the intercourse, she was awake, she was physically responsive, she never said no, she moaned and she said his name once or twice during the intercourse.
I
Appellant contends that his prior written statement to AFOSI and the transcript of his prior testimony were received in evidence without sufficient corroboration of his admission that he had sexual intercourse with the victim, a fact essential to the government’s proof. See Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954).
The general rule that an accused may not be convicted on his own uncorroborated confession was discussed by the Supreme Court in Smith v. United States, supra. The Court stated:
[The rule’s] purpose is to prevent “errors in convictions based upon untrue confessions alone,” Warszower v. United States, [312 U.S. 342, 347, 61 S.Ct. 603, 606, 85 L.Ed. 876 (1941)]; its foundation lies in a long history of judicial experience with confessions and in the realization that sound law enforcement requires police investigations which extend beyond the words of the accused. Confessions may be unreliable because they are coerced or induced, and although separate doctrines exclude involuntary confessions from consideration by the jury, Bram v. United States [168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)], supra; Wilson v. United States [162 U.S. 613, 16 S.Ct. 895, 40 L.Ed. 1090 (1896) ], supra, further caution is warranted because the accused may be unable to establish the involuntary nature of his statements. Moreover, though a statement may not be “involuntary” within the meaning of this exclusionary rule, still its reliability may be suspect if it is extracted from one who is under the pressure of a police investigation — whose words may reflect the strain and confusion attending his predicament rather than a clear reflection of his past. Finally, the experience of the courts, the police and the medical profession recounts a number of false confessions voluntarily made, Note, 28 Ind.L.J. 374. These are the considerations which justify a restriction on the power of the jury to convict, for this experience with confessions is not shared by the average juror. Nevertheless, because this rule does infringe on the province of the primary finder of facts, its application should be scrutinized lest the restrictions it imposes surpass the dangers which gave rise to them.
Smith v. United States, 348 U.S. at 153, 75 S.Ct. at 197.
The evidence before us gives no cause to suspect that appellant’s admissions were coerced. The primary need for corroboration in this case is to ensure that appellant has not made false statements for his own reasons or as the result of “strain and confusion.”
As to the quantum of corroboration required to substantiate the existence of a crime the Court said:
It is agreed that the corroborative evidence does not have to prove the offense beyond a reasonable doubt, or even by a preponderance, as long as there is substantial independent evidence that the offense has been committed, and the evidence as a whole proves beyond a reason *452 able doubt that defendant is guilty. [Citations omitted.] In addition to differing views on the substantiality of specific independent evidence, the debate has centered largely about two questions: (1) whether corroboration is necessary for all elements of the offense established by admissions alone, [citations omitted], and (2) whether it is sufficient if the corroboration merely fortifies the truth of the confession, without independently establishing the crime charged, [citations omitted]. We answer both in the affirmative. All elements of the offense must be established by independent evidence or corroborated admissions, but one available mode of corroboration is for the independent evidence to bolster the confession itself and thereby prove the offense “through ” the statements of the accused. [Citation omitted.] [Emphasis added.]
Smith, 348 U.S. at 156, 75 S.Ct. at 199.
Rule 304(g), Military Rules of Evidence, reflects this general rule and requires that, before an admission may be considered as evidence of an accused’s guilt or innocence, the essential facts of the admission must be corroborated by independent evidence, either direct or circumstantial, which justify an inference of the truth of such facts. Rule 304(g)(1) also discussed the quantum of corroborating evidence required. It states that “the independent evidence ... need not be sufficient of itself to establish beyond a reasonable doubt the truth of facts stated in the admission ____ The independent evidence need only raise an inference of the truth of the essential facts admitted.”
Applying these rules to the facts of this case we find that the testimony of Airman Coleman and the victim corroborates appellant’s admissions that, on the date alleged, Coleman, the victim, appellant, Pasetti, and Hawks had played cards in appellant’s room. The testimony further corroborates appellant’s statement that the victim and Coleman drank heavily and Coleman went into the next room in an extreme state of intoxication. There is abundant evidence to confirm that the victim was present in appellant’s room and intoxicated during the time when appellant admits he had intercourse with her. Appellant’s admissions indicated that Airman Pasetti had been in the room with the victim. They also indicated that Pasetti was not in the room at the time he (appellant) was having intercourse with the victim. Pasetti’s awareness of the incident and his absence from the room during the offense are corroborated by Airman Gomez’ testimony. Gomez said he saw Pasetti in the hall near the room, Pasetti asked him if he wanted to participate, and he opened the door to the room so that Gomez could look inside.
Appellant has also admitted taking pictures of the victim before he had intercourse with her. He said that, after he had had intercourse with the victim, he left the room. He stated that, as he left the room, he saw Airman Hawks in the room, that he (appellant) was naked as he left the room and that he was carrying his pants as he did so. These facts are directly corroborated by Airman Gomez who saw Airman Hawks kneeling in the room watching something shortly before he saw appellant leave the room naked, carrying his pants and his camera case. Gomez testified further that, as appellant left the room, he (appellant) said, “This is wild,” or words to that effect.
Appellant admitted further that, after he had left the room and dressed, he encountered Airman Coleman in the hall. Coleman asked for her pants[2] and also asked where the victim was. Appellant’s admission at Pasetti’s trial reflects that he told Coleman that the victim had left the barracks because he did not want her to discover that the victim was in the room and that Hawks was having sex with her. Appellant also admitted seeing Pasetti outside the room during the same general time- *453 frame. These facts were corroborated by Airman Gomez who said that after appellant left the room and dressed, he witnessed the encounter related by appellant and that Hawks had not yet left the room. In addition, the victim testified that she awoke to find Airman Hawks raping her.
Finally, appellant admitted ejaculating into Airman K.P.’s vagina. At trial the parties stipulated that Captain Christopher N. Heinrichs, M.D., would testify that a rape protocol examination of the victim revealed sperm in the victim’s vagina. Although other inferences could be drawn from this stipulation, one permissible inference was that the appellant was the source of the sperm.
Given the abundant evidence consistently corroborating significant details of appellant’s admissions, particularly the evidence corroborating his admission that, after the sexual intercourse, he left the victim alone with Hawks and departed the room naked, we find sufficient circumstantial evidence from which it can properly be inferred that appellant was being truthful when he said he had sexual intercourse with the victim. The fact that there are no witnesses who can provide direct evidence that they saw an unconscious or incapacitated victim being raped does not prevent the government from raising “an inference of the truth of the essential facts admitted” in an accused’s statement. Mil.R.Evid. 304(g)(1).
II
The prosecution offered Gomez’ testimony regarding Airman Pasetti’s statements under Military Rule of Evidence 801(d)(2)(E)[3] and, in the alternative, under Rule 804(b)(3).[4] Trial defense counsel conceded that the declarant was unavailable but argued that the evidence did not satisfy the requirements of either rule. Appellate defense counsel concur and also cite Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); Douglas v. Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934 (1965); and United States v. Oliver, 626 F.2d 254 (2nd Cir.1980), as authority that the evidence violated appellant’s Sixth Amendment Right of Confrontation.[5] We find that the evidence was admissible under Rule 803(3), Rule 804(b)(3) and the Sixth Amendment. As a result we need not consider its admissibility under Rule 801(d)(2)(E).
A
Airman Gomez testified that Pasetti asked him if he wanted “an easy__” This question, if it was hearsay at all, tended to prove Pasetti’s motive or state of mind at the time. As such it was admissible under Military Rule of Evidence 803(3). We next consider whether the evidence of the remainder of his statement satisfies the requirements of Rule 804(b)(3).
The defense has conceded the witness’ unavailability. We therefore need only determine whether the statements so far tended to subject Airman Pasetti to criminal liability that a reasonable person in his position would not have made them unless he believed them to be true. Mil.R.Evid. 804(b)(3). The essence of the rule is that the statement must be so self-incriminating that, although a reasonable person might carelessly but truthfully admit such matters, the dangers of accusation and prosecution would discourage such a person both *454 from fabricating a false statement to the same effect and from communicating it to another. Pasetti’s statements clearly revealed that he and others were engaging in sexual acts with Airman K.P. and that he believed that the victim was incapacitated and unable to consent or object. They revealed, further, that he intended to aid and encourage the related acts of Hawks and Baran[6] and that he solicited Gomez to participate as well. These statements subjected Pasetti to potential criminal liability for engaging in indecent acts, sexual assault and solicitation to rape. In light of all the evidence we find that Pasetti was aware of the wrongful nature of his acts and believed his statements were true. We also find that a reasonable person would not have made such statements unless he believed them to be true. Contrary to the view expressed in the dissenting opinion, we have no difficulty concluding that his statements met the requirements of the rule. See United States v. McConnico, 7 M.J. 302 (C.M.A.1979); cf. United States v. Dillon, 18 M.J. 340 (C.M.A.1984).
B
The relationship between the Confrontation Clause and the exceptions to hearsay rules has been the subject of much debate.[7] Indeed, it is difficult to arrive at a clear approach to the problem which is consistent with necessities of the fact-finding process, the principles of due process, and various Supreme Court decisions since 1965. The Clause states: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI. A literal reading of this language suggests that all hearsay must be excluded if the declarant is unavailable. Such a reading would thus suggest that many, if not most, hearsay exceptions are unconstitutional in criminal cases. The Supreme Court has, however, rejected such an interpretation as “unintended and too extreme.” Ohio v. Roberts, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980).
In California v. Green, 399 U.S. 149, 155, 90 S.Ct. 1930, 1933, 26 L.Ed.2d 489, 495 (1970), the Court stated that although the Sixth Amendment Confrontation Clause and evidentiary rules regarding hearsay protect similar values, the two are not completely congruent or overlapping. The resolution of the issue under applicable evidentiary rules, therefore, does not necessarily lead to an identical resolution of the constitutional issue.
The Confrontation Clause restricts the range of admissible hearsay in two ways. First, it reflects a preference for face-to-face accusation and therefore establishes a rule of necessity. This aspect of its protection requires the prosecution to either produce the declarant whose statement it seeks to admit or to demonstrate that the declarant is unavailable. Second, after the declarant has been shown to be unavailable, the Sixth Amendment reflects the interest of enhancing accuracy by providing the defendant “an effective means to test adverse evidence.” Ohio v. Roberts, 448 U.S. at 65, 100 S.Ct. at 2538. This aspect of the Clause condones only that hearsay which is “marked with such trustworthiness that ‘there is no material departure from the reason of the general rule.’ ” Ohio v. Roberts, 448 U.S. at 65,100 S.Ct. at 2538, citing Snyder v. Massachusetts, 291 U.S. 97,107, 54 S.Ct. 330, 333, 78 L.Ed. 674, 679 (1934).
In Mancusi v. Stubbs, 408 U.S. 204, 212-213, 92 S.Ct. 2308, 2312-2313, 33 L.Ed.2d 293 (1972), the Court explained that, when the declarant’s unavailability has been shown, its concern “has been to insure that there ‘are indicia of reliability’ ... and to ‘afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement,’ California v. Green, supra [399 U.S.], at 161 [90 S.Ct. at 1936].” In Ohio v. Roberts, 448 U.S. at 66, 100 S.Ct. at 2539, *455 the Court noted that it “has applied this ‘indicia of reliability’ requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the ‘substance of the constitutional protection.’ Mattox v. United States, 156 U.S. [237] at 244 [15 S.Ct. 337, at 340, 39 L.Ed. 409 (1895)]. It stated further that “[Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.” Id.
Appellate defense counsel have relied, almost exclusively, on the holdings in Bruton v. United States, supra, and Douglas v. Alabama, supra. Bruton, however, involved a joint trial in which evidence, though admissible against one accused, was hearsay as to his co-accused and not admissible under any recognized exception to the hearsay rule. The Court began its opinion by plainly stating that it granted certiorari to reconsider its holding in Delli Paoli v. United States, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). Bruton, 391 U.S. at 123, 125, 88 S.Ct. at 1622. In Delli Paoli the Court had accepted the viability of a jury instruction to protect an accused against an otherwise inadmissible confession by his co-accused. Throughout its opinion in Bruton, the Court focused on the question of whether its holding in Delli Paoli should stand. It also emphasized that its decision suggested “no view whatever that [hearsay] exceptions necessarily raise questions under the Confrontation Clause. Bruton, 399 U.S. at 128 n. 3, 88 S.Ct. at 1623 n. 3. Thus, the essence of the Court’s holding in Bruton was not that all hearsay evidence offends the Sixth Amendment but that, when hearsay is admitted against one accused in a joint trial and is, under existing evidentiary rules, inadmissible against the co-accused, a cautioning instruction does not sufficiently protect the co-accused’s right of confrontation. Dutton v. Evans, 400 U.S. 74, 86, 91 S.Ct. 210, 218, 27 L.Ed.2d 213 (1970). In Douglas v. Alabama, the declarant of the hearsay statement was again a co-actor in the offense. His statement, however, was never admitted in evidence. Instead, the prosecutor first called the declarant as a witness. When the declarant qua witness claimed his privilege against self-incrimination and refused to respond to the prosecutor’s questions, the prosecutor, in the presence of the jury, read the entirety of the written hearsay statement under the guise of refreshing the witness’ recollection. Douglas, 380 U.S. at 416, 85 S.Ct. at 1075.
The case now before us bears greater resemblance to a later case, Dutton v. Evans, supra, wherein one of three co-conspirators made a fundamentally spontaneous statement to an acquaintance under circumstances demonstrating no motive to misrepresent the truth for personal gain. Although the declarant did not testify at trial, was never cross-examined, and there was no showing that he was unavailable, the Court, in a plurality opinion, found that the circumstances provided “indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation____” Dutton v. Evans, 400 U.S. at 89, 91 S.Ct. at 219.
Regarding the case sub judiee we first note that, at trial, appellant conceded that Pasetti was not available to testify. The Confrontation Clause requirement of necessity was thus satisfied.[8]
Pasetti’s statement contained one question and seven basic assertions. The question was whether Gomez wanted to partici *456 pate in the incident. The assertions were: (1) that he had a woman in his room; (2) that she was drunk; (3) that he was “switching on her”; (4) that the woman insisted that others leave the room; (5) that appellant took pictures of him and the woman engaging in intercourse; (6) that “they” surreptitiously replaced Pasetti’s hand in the woman’s vagina with the hand of one of the other participants without the woman knowing it; and (7) that Hawks was having intercourse with the woman and she was unaware of it.
Pasetti’s statements that he had a woman in his room and that she was drunk were cumulative of abundant undisputed evidence and, under the circumstances, appellant had several opportunities to explore and confront the truth of these facts. In fact, appellant’s own admissions tended to support their truth. We also find abundant indicia of the reliability of all the assertions contained in Pasetti’s statement. First, we find it to be particularly significant that Pasetti’s statements were made at the time and place of the criminal events to which he was referring and not in an investigative custodial setting. The content and context of Pasetti’s statement give no reason to believe that he was trying to place false blame on the appellant. See McConnico, 7 M.J. at 309. Second, the statements were against Pasetti’s penal interests. A reasonable person would not have made such statements unless he believed they were true. These are circumstances which have been widely recognized as providing circumstantial guarantees of trustworthiness. Third, the evidence convincingly establishes that Pasetti had personal knowledge of the events he was describing. Fourth, the nature of the statements negates any reasonable possibility that Pasetti’s statements were flawed by faulty recollection. Fifth, defense’s cross-examination of Gomez provided ample information from which the court could properly evaluate the extent to which Pasetti’s ability to observe and relate events may have been impaired. Sixth, and by no means least, important aspects of Pasetti’s statements were corroborated by (a) the victim’s description of the events preceding the rape, the extent of her intoxication, and her evident lack of awareness during the sexual assaults, and (b) Airman Gomez’ testimony regarding his observations of Airman Pasetti outside the room, Airman Hawks in the room, and the appellant leaving the room naked, and his testimony regarding appellant’s statements indicating his state of mind at the time of the offense. See United States v. Alvarez, 584 F.2d 694 (5th Cir.1978). These circumstances constitute overwhelming indicia of reliability from which the finder of fact could evaluate the truth of Pasetti’s statements. California v. Green, 399 U.S. at 161, 90 S.Ct. at 1936. Finally, we note that, under Rule 806, Mil.R.Evid., the defense would have been permitted to attack Pasetti’s credibility.
Before concluding that the Sixth Amendment was not violated, however, we must consider an additional factor not yet discussed. The Supreme Court has stated that, at a joint trial, the admission “of the incriminating extrajudicial statements of a nontestifying codefendant can have ‘devastating’ consequences to a non-confessing defendant.” Parker v. Randolph, 442 U.S. 62, 72, 99 S.Ct. 2132, 2138, 60 L.Ed.2d 713 (1979); Bruton, 391 U.S. at 128, 88 S.Ct. at 1623. Although Dutton v. Evans did not involve a joint trial of co-defendants, the Court, nevertheless, again noted that the hearsay evidence in question was not “crucial” or “devastating.” In our view these references to “crucial” and “devastating” imply that the underlying commitment to truth embodied in the Sixth Amendment requires analysis of the significance of the specific hearsay evidence offered. When the evidence is significant to the resolution of the issues in the case, the degree of reliability required for admissibility must be proportionally higher. The Court’s decisions imply further that, when hearsay evidence is essential to the resolution of guilt or innocence, the Sixth Amendment and, perhaps, due process considerations demand that an accused have an opportunity to actually cross-examine the hearsay de *457 clarant. See United States v. Garrett, 16 M.J. 941 (N.M.C.M.R.1983).
Under the facts before us we find that the evidence of Pasetti’s statement, though important, was not crucial or devastating. The primary issues in the case were whether appellant had intercourse with the victim and, if so, whether she consented. Even without Pasetti’s statements the prosecution was able to present a persuasive prima facie case. The crucial evidence of intercourse was not Pasetti’s statement but appellant’s own admissions. Cf. Parker v. Randolph, 442 U.S. at 72-73, 99 S.Ct. at 2138-2139. As to consent, the prosecution not only presented the victim’s testimony and the corroboration of her testimony provided by Airman Coleman and Airman Gomez, but also presented the evidence of appellant’s state of mind as reflected in his statement to Gomez to the effect that he “guessed” the victim knew what was happening because she was moaning. In addition, the victim’s lack of consent is manifest in appellant’s admissions that, without prior discussion or agreement with the victim, he entered the room, precipitously disrobed and began kissing a woman who had not acknowledged his presence and with whom he had no prior sexual relationship. We have also carefully considered Pasetti’s statements as they relate to the defense of mistake of fact. In light of appellant’s own description of the events in the room, we find that Pasetti’s statements were not devastating to such a defense in this case.
Although we have found that Pasetti’s statements were not crucial or devastating, they were, nevertheless, of some importance and thus required more than minimal reliability. We have therefore examined them in light of the considerations discussed above and concluded that they were attended by profuse credible evidence with which the trier of fact could properly and effectively evaluate their truth. We therefore find that appellant’s Sixth Amendment Right to Confrontation was not violated by the admission of Gomez’ testimony regarding Pasetti’s out of court statements. See United States v. Foster, 711 F.2d 871, 880-881 (9th Cir.1983), cert. den., — U.S.-, 104 S.Ct. 1602, 80 L.Ed.2d 132 (1984); United States v. Blakey, 607 F.2d 779, 786-787 (7th Cir.1979).
We have considered the remaining assignment of error and concluded that no error materially prejudicial to the substantial rights of the accused was committed. The findings of guilty and sentence are, therefore,
AFFIRMED.
RAICHLE, Senior Judge, concurs.

. The approved sentence included a suspended bad conduct discharge, confinement at hard labor for eleven months, forfeiture of all pay and allowances, and reduction to airman basic.

. Airman Coleman testified that a drink had been spilled on her pants and that she had given them to Baran to be laundered.

. Rule 801(d)(2)(E) provides: "(d) Statements which are not hearsay. A statement is not hearsay if: (2) Admission by party-opponent. The statement is offered against a party and is (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy."

. Rule 804(b)(3), in pertinent part, provides: (b) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness: (3) Statement against interest. A statement which ... at the time of its making ... so far tended to subject the declarant to civil or criminal liability ... that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true.”

. “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him ____" U.S. Const. amend. VI.

. He thus opened himself to potential liability for the sexual assaults perpetrated by Hawks and Baran. See U.C.M.J., Art. 77, 10 U.S.C.A. § 877; and Para. 156, M.C.M., 1969 (Rev.).

. See Ohio v. Roberts, 448 U.S. 56, 66 n. 9, 100 S.Ct. 2531, 2539 n. 9, 65 L.Ed.2d 597 (1980).

. In United States v. Valente, 17 MJ. 1087, ACM 24051 (A.F.C.M.R.1984), this court held that the military judge erred when he denied a defense request to grant immunity to a declarant who was "unavailable” in the sense that, if called, he would assert his privilege against self-incrimination. The defense not only made no such request in the case before us but conceded that the witness was unavailable. We decline to extend our holding in Valente so as to require the military judge to grant immunity to such a declarant sua sponte in spite of the concessions, desires, or tactics of the parties.