UNITED STATES, Appellee,

v.

Jeffrey L. BARAN, Sergeant, U.S. Air Force, Appellant.

No. 51,450.
ACM 24340.

U.S. Court of Military Appeals.

July 14, 1986.

For Appellant: *Lieutenant Colonel Patrick C. Sweeney* (argued); *Colonel Leo L. Sergi* (on brief).

For Appellee: *Lieutenant Colonel Donal F. Hartman, Jr.* (argued); *Colonel Kenneth R. Rengert* (on brief); *Colonel Andrew J. Adams, Jr. and Lieutenant Colonel Robert E. Giovagnoni.*

*Opinion of the Court*

COX, Judge:

Appellant was tried by general court-martial composed of a military judge alone on December 9–10, 1983, at Royal Air Force Alconbury, England. Contrary to his pleas, he was found guilty of rape, in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920. He was sentenced to a dishonorable discharge, 11 months' confinement, total forfeitures, and reduction to E–1. The convening authority reduced the dishonorable discharge to a bad-conduct discharge and then suspended the discharge but otherwise approved the adjudged sentence. The Court of Military Review affirmed. 19 M.J. 595 (1984).

This Court granted review on the following issues:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED IN ALLOWING HEARSAY TESTIMONY FROM AIRMAN GOMEZ REGARDING STATEMENTS MADE TO HIM BY AIRMAN PASETTI, THE ACCUSED'S ROOMMATE.

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE ACCUSED BY ADMITTING IN EVIDENCE THE ACCUSED'S TESTIMONY FROM THE CASE OF *UNITED STATES V. PASETTI,* AND THE ACCUSED'S PRIOR WRITTEN STATEMENT WITHOUT ADEQUATE CORROBORATION.

This case arose out of a card game in appellant's barracks room. Appellant, Airman Lawrence Pasetti, Airman Otis Hawks, the alleged victim, and another female were playing a game where the loser of each hand of cards was required to take a drink of bourbon. A stipulation of fact stated that the group had drunk more than a quart of bourbon during the card game. The victim testified that she remembered the end of the game; she remembered waking up in a bed with an airman named Hawks; she remembered having intercourse with Hawks; and she felt that she had had intercourse with Pasetti, but she could not recall having had intercourse with appellant.

To prove the charged offense, the prosecution called Airman Vincent Gomez, who testified over defense objection to certain statements by Pasetti, Hawks, and appellant around the time of the alleged offense. He testified that he was in the hallway outside the barracks room where the alleged crime took place. He said that Pasetti said, "Hey, Gomez, do you want an easy fuck?"; "that he had a girl in his room, and he was switching on her"; and that the two women had gotten "pretty well drunk." He further testified that Hawks said from the darkened room, "Are you going to fuck her?", and that Pasetti then said, "Wouldn't it be funny if she knew Hawks was screwing her because she didn't like black guys."

Gomez further testified that he saw appellant who was naked exit the room with a camera case in his hand. Appellant commented to the effect that the situation was "wild." Gomez then asked him, "Does she know what's going on?" and appellant replied, "She's moaning. I guess she does."

Appellant's statement to Air Force investigators and his prior testimony at Pasetti's trial were also introduced as evidence by the prosecution. He admitted having sexual intercourse with the alleged victim but maintained that it was consensual. He also asserted that although she said nothing to him before or after the intercourse, she was awake; she was physically responsive; she never said no; she moaned; and she said his name once or twice during the intercourse. See United States v. Baran, supra at 596–97, for a more complete recitation of the facts.

I

The prosecution was required by Article 120 to prove beyond a reasonable doubt that appellant committed "an act of sexual intercourse with" the victim "by force and without her consent." It attempted to meet this burden by showing appellant engaged in sexual intercourse with the victim when she was so drunk as to be incapable of giving her consent. See para. 199a, Manual for Courts-Martial, United States, 1969 (Revised edition); United States v. Carver, 12 M.J. 581, 583 (A.F.C.M.R. 1981), remanded, 13 M.J. 9 (C.M.A. 1982), pet. denied, 15 M.J. 397 (1983) ("if a man engages in sexual intercourse with a female ... whom he knows is unconscious, he is guilty of rape, because the act is without her consent"). Based on generally accepted principles of law with respect to similarly worded rape statutes and the Supreme Court decision in Mills v. United States, 164 U.S. 644, 17 S.Ct. 210, 41 L.Ed. 584 (1897), this Court has recognized this theory of criminal liability under Article 120 of the Code. See United States v. Short, 4 U.S.C.M.A. 437, 441–43, 16 C.M.R. 11, 15–17 (1954).

Trial counsel indicated at various points in the record of trial that he intended to use Pasetti's out-of-court statements to show the victim's condition at the time of the offense and to corroborate appellant's admissions that he had sexual intercourse with her. The statements of Pasetti to Gomez establish that he had been in a position to observe her and that he was of the opinion that she was so drunk that she did not know with whom she was engaging in sexual acts. Moreover, although not expressly stated, they could be reasonably interpreted to mean that appellant was going to or had already engaged in sexual intercourse with her. In this light, it was quite clear that the prosecution was offer-

ing Pasetti's out-of-court statements for "the truth of the matter[s] asserted" in these statements. Mil.R.Evid. 801(c), Manual, *supra*.[1] Pasetti, however, was not called to the stand to repeat the statements he made at the time of the offense. *Cf.* Mil.R.Evid. 801(d)(1). The parties agreed that if Pasetti were called, he would assert his privilege against self-incrimination. Consequently, the prosecution evidenced his statements by calling Gomez, the person to whom these statements were made.

The first granted issue implicates several military rules of evidence utilized by the prosecution to admit Pasetti's out-of-court statements to prove elements of the charged offense. Mil.R.Evid. 801(d)(2)(E) and 804(b)(3). In passing, we note that Mil.R.Evid. 803(1) might also be implicated for this same purpose as well, even though not addressed at the trial level or the Court of Military Review. *Cf. United States v. Watkins*, 21 M.J. 224 (C.M.A. 1986). Moreover, sixth-amendment confrontation questions also exist, as pointed out by the court below. *See United States v. Inadi*, —— U.S. ——, 106 S.Ct. 1121, 89 L.Ed.2d 390 (1986); *Ohio v. Roberts*, 448 U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980). We do not decide these difficult questions today for reasons stated in part II of this opinion.

## II

■ Our examination of the record of trial and the opinion below reveals a factual question which must be resolved prior to disposing of the legal issues in this appeal. As noted above, the prosecution relied not only on Pasetti's statements to prove the elements of the charge of rape, but also on appellant's statements to Gomez around the time of the alleged offense, his subsequent written statement to Air Force investi-

tigators, and his later testimony at Pasetti's court-martial. In these statements appellant consistently asserted an honest and reasonable belief, on the basis of the conduct of the alleged victim, that she voluntarily consented to an act of sexual intercourse with him. In addition, there was other evidence that pointed at least to the appearance of consent by the victim. Further, in his argument on findings, trial defense counsel reiterated this defense theory to the factfinder, the military judge. In our view, the evidence was sufficient to raise the defense of mistake of fact. *See generally United States v. Carr*, 18 M.J. 297 (C.M.A.1984); para. 214, Manual, *supra*.[2] Based on the trial findings, we must assume that the military judge was persuaded, beyond a reasonable doubt, that appellant was not reasonably and honestly mistaken regarding the victim's consent.

The Court of Military Review was likewise free to evaluate the credibility of this evidence and to reject the affirmative defense as a matter of fact. Art. 66(c), UCMJ, 10 U.S.C. § 866(c). However, the opinion below did not address this question of sufficiency. In other circumstances, we might have been content to pass over the matter, relying on a presumption of regularity in the appellate process. However, we view this issue so central to a just resolution of this case that we decline to proceed without the benefit of an express factual determination thereof by the Court of Military Review.[3]

The decision of the United States Air Force Court of Military Review is set aside. The record of trial is returned to the Judge Advocate General of the Air Force for remand to that court for consideration of the following question:

---

1. Like Judge Canellos, dissenting below, *United States v. Baran*, 19 M.J. 595, 603, 605 (1984), but unlike the majority, 19 M.J. at 603, we view Pasetti's statement as being extremely critical on the issue of the victim's consent or the reasonableness of appellant's belief that she consented.

2. *Cf.* R.C.M. 916(j) and para. 45, Part IV, Manual for Courts-Martial, United States, 1984.

3. Resolution in favor of the Government of the two issues granted in this case would not obviate our concern. Those issues relate to proof of the elements of the charged offense and not the need for, and sufficiency of, evidence to disprove an affirmative defense.

WHETHER ASSUMING, *ARGUENDO*, THE EVIDENCE OF PASETTI'S STATEMENTS WAS ADMISSIBLE, THE EVIDENCE OF RECORD DISPROVES THE AFFIRMATIVE DEFENSE OF REASONABLE AND HONEST MISTAKE OF FACT BEYOND A REASONABLE DOUBT.

In addition, that court may consider the other issues raised by Chief Judge Everett in his separate opinion.

Judge SULLIVAN did not participate.

EVERETT, Chief Judge (concurring):

I write separately to outline some of my reasons for concern that justice was not done in this case.

Pasetti's extrajudicial statement to Gomez was admitted by the military judge on the theory that it qualified under Mil.R. Evid. 801(d)(2)(E) as "a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy" and, in the alternative, under Mil.R.Evid. 804(b)(3) as a declaration against penal interest. Of course, the burden was on the Government as the proponent to establish that despite the hearsay prohibition the statement was admissible under these rules. In my view, this burden was not carried because the Government failed to demonstrate (a) that a conspiracy existed, and (b) if it did exist, that Pasetti's statement to Gomez was "in furtherance of the conspiracy."

Admissibility of a statement against penal interest requires as a predicate that the declarant be unavailable. As Judge Canellos observed in his dissent in the Court of Military Review, trial counsel failed to establish Pasetti's unavailability. 19 M.J. 595, 603 n. I am puzzled by trial defense counsel's apparent concession that Pasetti was unavailable because, if called to testify, he would assert his privilege under Article 31, Uniform Code of Military Justice, 10 U.S.C. § 831, and refuse to do so. Pasetti had already been tried; accordingly, it would appear that his testimony could have been made available through use of testimonial immunity. *Cf. United States v. Valente*, 17 M.J. 1087 (A.F.C.M.R.1984). Sometimes a grant of testimonial immunity can create problems for the Government, *cf. United States v. Gardner*, 22 M.J. 28 (C.M.A. 1986); but after the person to be immunized has already been tried, those problems should be minimal. Thus, a "reasonable means" existed to obtain Pasetti's testimony. *See* Mil.R.Evid. 804(a)(5).

More important, I fully agree with Judge Canellos that this was not a statement against penal interest within the contemplation of Mil.R.Evid. 804(b)(3). 19 M.J. at 603–04. *Cf. United States v. Dillon*, 18 M.J. 340 (C.M.A.1984). For a statement to be admissible under this hearsay exception, the proponent must establish "that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true." The rationale for this exception is that under these circumstances, a guarantee of trustworthiness exists because someone usually does not make a statement that may send him to jail or cost him money unless he believes it to be true.

To be fully consistent with this rationale, Mil.R.Evid. 804(b)(3) might better have discarded an objective standard—concerned with the belief of a reasonable person—in favor of a subjective standard—focusing on the belief of the particular declarant.[1] In that event, the issue would be whether Pasetti believed that his statement was against his penal interest; and the belief of a reasonable person in his position would have been important only in showing circumstantially what Pasetti himself believed. However, whether a subjective or objective standard is used makes no difference in this case. Because simple fornication is not recognized as a crime under military law and does not itself create any civil liability, the evidence was insufficient to establish that Pasetti or anyone in his position would have believed that his comments subjected him to any liability.

---

1. If the declarant believed—however, unreasonably—that the statement benefited him, there is no assurance of trustworthiness, regardless of what a reasonable person would have believed.

In *United States v. Dillon, supra,* we concluded that "[a] person so intimate with drugs would scarcely have believed that he was making a declaration against penal interest when he mentioned to a friend that he had drugs for sale." 18 M.J. at 345. Likewise, neither Pasetti nor anyone else would have thought that he was making a declaration against penal interest when he invited others to join in sexual intercourse with the alleged victim. Indeed, Gomez— the very person to whom the statement was made—testified as a government witness on direct examination that he had no idea from Pasetti's remarks that any crime had been committed. I shall not go further in making this point, for Judge Canellos did so quite effectively in his dissent.

I would be reluctant to uphold admissibility of Pasetti's statement on a theory of "present sense impression" under Mil.R. Evid. 803(1) or "excited utterance" under Mil.R.Evid. 803(2) because these theories were not relied on at trial; were not mentioned in the Court of Military Review's opinion; and were never raised by counsel. Moreover, it appears that some of Pasetti's rambling, drunken comments to Gomez do not fit within these exceptions. Finally, there is little occasion to try to justify admissibility of Pasetti's statement on some ground not argued by counsel and thereby salvage the conviction because the case has many other disturbing features.

One of these concerns a possible lack of the effective assistance of counsel. As noted earlier, trial defense counsel gratuitously conceded the unavailability of Pasetti[2]. Moreover, it seems strange that appellant testified at Pasetti's trial without obtaining a grant of testimonial immunity, so that the Government could not have used his own testimony to prove an essential element of rape—namely, penetration. Inasmuch as the alleged victim did not recall having intercourse with Baran, apparently the Government could not have demon-

strated his guilt without introducing his own version of the events.

Second, I have doubts that the evidence here is sufficient to establish guilt within the standard prescribed by *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The alleged victim and another female airman had been drinking at a club. They joined appellant, Pasetti, and another airman, Otis Hawks, to play a drinking game in the barracks room of appellant and Pasetti. According to the victim's testimony, she drank extensively— more than ever before in her life—and did not remember anything until she awakened on a bed while someone other than appellant was having sexual intercourse with her. She described the experience as follows on direct examination:

> So when I woke up, I didn't know who it was; but they were kissing me. And I kissed him back. And then they asked me, "Do you love it? Do you love it?" And I responded, "Yes, I do. I love it. I love it." And then I asked—then I realized it was Airman Hawks, and I was crying. I asked him to please stop because I was trying—I don't know. It was like I couldn't get control of myself. I couldn't think straight enough to stop him, to really, you know, not respond to what he was doing. I asked him to stop and he pulled out, and he stopped. And then he tried to re-enter my anus. And then I asked him to stop again, and he had stopped.

In other portions of her testimony, she conceded that she had engaged in "French kissing" with the individual with whom she was having intercourse and that she may have placed his penis in her vagina.

From her testimony it appears that some of her claimed aversion to intercourse with Hawks arose because he was a black man, and she never dated black persons. In view of this reason for terminating inter-

---

**2.** Perhaps, trial defense counsel decided on tactical grounds that it would be better to allow Pasetti's extrajudicial statement to be proved by Gomez than to insist that the Government immunize Pasetti. He may have concluded that Pasetti would be hostile to Baran because the latter had testified at Pasetti's trial.

course, it would appear quite likely that before this she had been willing to have intercourse with Baran, who was not subject to what she perceived as an ethnic disqualification applicable to Hawks.

At all times appellant has insisted that the alleged victim gave her consent to intercourse. This claim fails if at the time she was unable to give consent. However, later inability to recall what happened does not signify that at the time of intercourse she was unable to give consent. As this Court recognized long ago, alcohol may affect a person's memory and inhibitions without depriving him of volition; and proof of amnesia does not conclusively establish that someone was unconscious or lacked mental responsibility at the time of the events they have forgotten. *United States v. Olvera,* 4 U.S.C.M.A. 134, 15 C.M.R. 134 (1954).

Not only is it questionable that the Government has met its burden of establishing that the intercourse took place without the victim's consent, but also it would appear that, if she did not consent, Baran reasonably believed that she did, and the Government's evidence failed to disprove the mistake-of-fact defense which he asserted. *See generally United States v. Carr,* 18 M.J. 297 (C.M.A.1984) (honest and reasonable mistake of fact as to the victim's consent is available as a defense to a rape charge).

In light of the disposition directed in the principal opinion, the Court of Military Review will have a full opportunity to exercise its factfinding and other powers to rectify any injustice that has occurred.