## UNITED STATES

v.

**Sergeant Jeffrey L. BARAN, FR 143–58–4718, United States Air Force.**

**ACM 24340 (f rev).**

U.S. Air Force Court of Military Review.

Sentence Adjudged 10 Dec. 1983.

Decided 19 Dec. 1986.

Appellate Counsel for the Appellant: Colonel Leo L. Sergi and Lieutenant Colonel Patrick C. Sweeney.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Robert E. Giovagnoni.

Before SESSOMS, STEWART and LEWIS, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

SESSOMS, Senior Judge:

The appellant was convicted of rape in violation of Article 120, U.C.M.J., 10 U.S.C. § 920. The sentence imposed by the military judge included a bad conduct discharge, confinement for 11 months, forfeiture of all pay and allowances, and reduction to the grade of airman basic.

When this case was first considered by this Court the appellant had assigned three errors. The first assignment concerned the admissibility of certain portions of the testimony of an Airman Gomez. His testimony included his recollection of comments made to him by Airman Pasetti, a roommate of the appellant. The second assignment protested the admission of a transcript of the testimony which the appellant had given during the trial of Airman Pasetti. And, the third assignment charged that

it was error to allow a former prosecutor to repeat a statement made by the appellant in a pretrial interview. This Court originally affirmed the findings and sentence in a split decision. 19 M.J. 595. The case is before us again on remand from the Court of Military Appeals to resolve the following issue:

WHETHER, ASSUMING, ARGUENDO, THE EVIDENCE OF PASETTI'S STATEMENTS WAS ADMISSIBLE, THE EVIDENCE OF RECORD DISPROVES THE AFFIRMATIVE DEFENSE OF REASONABLE AND HONEST MISTAKE OF FACT BEYOND A REASONABLE DOUBT.

22 M.J. 265

On reconsideration we have determined that the question propounded on remand must be answered in the negative.

The victim of this unfortunate misadventure, Airman P, and her female companion, Airman C, were newly assigned to Royal Air Force Alconbury, England. During the afternoon of May 30, 1983 the two of them went to the Aquarius Club, an airmen's club on base which was popularly known as the "AQ Club." There they happened to meet Pasetti, Baran, and Hawkes, fellow airmen with whom they were somewhat acquainted.

During a conversation which eventually ensued, they all agreed to engage in a drinking game called "spoons," in the barracks room of appellant and Pasetti. This game was somewhat similar to musical chairs, except that it is played with a deck of ordinary playing cards, a glass, and some spoons. It is sufficient for our purposes to state only that each time the cards are dealt one of the participants becomes a "loser." The loser then is required to drink a predetermined amount of some alcoholic beverage. The beverage could be beer, wine, or distilled spirits. As the game progresses the sobriety, and therefore the judgment of each player is directly affected by the number of times he becomes the loser. On this occasion they chose to drink from a large bottle of bourbon provided by Pasetti. Since some 40 ounces of bourbon was consumed by these five people during a three to four hour period, it would seem reasonable to assume that they were all imbibing to some extent. Evidence that the women became substantially more intoxicated than the men seems not to be in dispute. In fact, Airman C was not only intoxicated, but by late afternoon she had become sick, and finally had to go into another room to sleep. After Airman C's departure, each of the three male airmen had sexual intercourse with Airman P.

As Airman P subsequently related what she recalled of the events of the afternoon, she said that she awoke to find that someone was having intercourse with her. As reality dawned she became aware that she was responding to his sexual moves and to his "French" kisses. When asked whether she liked it, she responded, "I love it. I love it." When she realized that her lover was Airman Hawkes, she asked him to stop. He complied with her request, but not before attempting to insert his penis into her anus. The evidence is not conclusive as to whether there was actual anal penetration. Later that night Airman P complained to law enforcement authorities that she had been raped by Airman Hawkes. When questioned, the three airman admitted having intercourse with her, but contended that it was with her consent. This she initially denied. However, she did seem to remember some of the events related by the three men when they were later repeated to her by an Office of Special Investigations (OSI) agent. For instance, she seemed to remember, though not clearly, that she might have consented to having sex with Pasetti. She also remembered responding to the sexual movements and kisses of Hawkes before she discovered his identity. However, at no time did she ever have any recollection of having had intercourse with the appellant, Sergeant Baran.

At trial the government argued that Airman P was too drunk to be capable of giving her consent. Although the appellant did not testify in his own behalf, he argued that he could not be guilty of rape

because she had consented to his sexual advances. He also argued, in the alternative, that even if she was so intoxicated that she was incapable of consenting, he honestly and reasonably believed that she did. Airman P, on the other hand, continued to insist that she did not consent to intercourse with him. During cross examination she gave the following response to a question from the defense counsel, "... but I know that I didn't consent. I would not have consented to letting Pasetti have sex with me and turn around and have Baran and then let Otis (Hawkes). I did not do that."

The only other evidence adduced at trial to prove that the appellant could not have reasonably and honestly believed that Airman P consented to having sex with him was provided by Airman Gomez. He testified, over defense objection, that he met Pasetti in the hallway of the barracks during this fateful afternoon. He told the court that Pasetti called out to him, "Hey, Gomez, do you want an easy fuck?" Gomez said that when he declined to become involved, Pasetti told him that he and Hawkes had run into a couple of new girls in the AQ Club, and that they had brought them into the barracks to play "spoons." Pasetti went on to relate to Gomez how, after the game, he had had sexual intercourse with one of the girls and that when he finished, they had "switched on her." He described the switching in this fashion: He, Pasetti, held his hand in the girl's vagina. As he withdrew his hand another airman inserted his hand without the girl being aware of the switch. Gomez also told of Pasetti's professed desire to find Sergeant Paskell. Sergeant Paskell was known to be "a virgin in the flight." When asked if he knew why Pasetti was looking for Paskell, Gomez said, "I kind of figured it out."

The prosecution was permitted, over objection, to introduce a statement the appellant had made to the OSI, as well as, a transcript of the testimony which the he had given during the trial of Pasetti. In the Pasetti trial appellant denied that he participated in the switching game that Pasetti described to Gomez. He said that when he walked in the room, "Pasetti was off to the side of the bed, it looked like with his hand between her legs. He kind of like just shrugged his shoulders and I walked over there at the time, and he walked out." He described the girl as lying on her back on the bed without any pants or panties on, and with her sweater pushed up above her breasts. He said that he apologized to her for his role in an incident that occurred sometime earlier in the AQ Club, and he admitted having sexual intercourse with her. He maintained that he believed that she was consenting to his sexual advances because she responded to his movements, stuck her tongue in his mouth, and at least twice called out his first name. He testified that he was under the impression that they both climaxed at about the same time. When he finished, he got off the bed, picked up his clothes and left the room.

According to Gomez, the appellant proceeded down the hallway to the bathroom where Gomez asked him whether the girl knew what was happening to her. Gomez said his reply was, "I guess so. She is moaning." The appellant had given a similar answer in the Pasetti trial when he was asked if there was any other indication from her that she was enjoying the act of sexual intercourse. To that he said, "Just her moans, the way she moaned and said my name."

■ As Judge Everett observed in his concurring opinion above, citing *United States v. Olvera,* 4 U.S.C.M.A. 134, 15 C.M.R. 134 (1954), alcohol may affect a person's memory and inhibitions without depriving him of volition; and proof of amnesia does not conclusively establish that someone was unconscious or lacked mental responsibility at the time of the events they have forgotten. The Court also reminded us that honest and reasonable mistake of fact as to the victim's consent is available as a defense to a rape charge. *United States v. Carr,* 18 M.J. 297 (C.M.A.1984).

■ In order to sustain a conviction in this case the Government must shoulder a two-fold burden. It must first prove that Airman P did not consent to having sexual intercourse with the appellant. Once this has been established, it must then disprove the affirmative defense of reasonable and honest mistake of fact. Even if we assume, arguendo, that the evidence of Pasetti's statements to Gomez were admissible, the most credible evidence adduced at trial on the issue of consent is the testimony of the appellant in the trial of Pasetti and the assertion by the victim that, although she could not remember anything at all about her sexual encounter with the appellant, she knows that she would not have consented under those circumstances. When we view the state of this evidence, considered in context with all the other events of that day, we are compelled to conclude that the Government failed to disprove beyond a reasonable doubt the affirmative defense of reasonable and honest mistake of fact. Therefore, the findings and sentence in this case are hereby set aside and the Charge and its Specification are

DISMISSED.

Judge STEWART and Judge LEWIS concur.