BAKER, Chief Judge
(dissenting):
I respectfully dissent for two reasons.
First, I would hold that Appellant’s actions assisted the ingestion of a controlled substance and amounted to more than distribution. He crushed the pill in the presence of the users. He divided it into two lines. The users then snorted the crushed pill using a dollar bill. This constitutes aiding and abetting wrongful use. Moreover, aiding and abetting wrongful use in this fashion is “an offense ... directly affecting the person.” Helping someone ingest a drug meets a plain English definition of what it means to directly affect the person. The active participation in the ingestion is direct conduct, not the indirect conduct of distribution. And, it affects the person; that is what drugs do and that is apparently the purpose of taking the drug. As a result, Appellant’s conviction was legally sufficient under Article 119(b)(2), UCMJ, 10 U.S.C. § 919(b)(2) (2006).
Second, in regards to the specified issue, the offense in question is not LK’s wrongful use — the offense is Appellant’s aiding and abetting wrongful use. While LK was not subject to prosecution for wrongful use, this does not relieve Appellant of liability as a principal under Article 77(1), UCMJ, 10 U.S.C. § 877 (2006), which addresses “offense[s] punishable by this chapter.” Wrongful use is such an offense. Therefore, I would hold that Appellant may still properly be considered as aiding and abetting wrongful use.
DISCUSSION

Issue I

This case centers on whether Appellant’s “aiding or abetting [the] wrongful use of Oxymorphone” constitutes an “offense ... directly affecting the person” under Article 119(b)(2), UCMJ. An “offense directly affecting the person” is defined as an offense “affecting some particular person as distinguished from an offense affecting society in general.” Manual for Courts-Martial, United States pt. IV, para. 44.c.(2)(b) (2008 ed.) (MCM). “Among offenses directly affecting the person are the various types of assault, battery, false imprisonment, voluntary engagement in an affray, and maiming.” Id.
In United States v. Sargent, this Court’s predecessor addressed this issue. 18 M.J. 331 (C.M.A.1984). First, the Court considered the legislative history of Article 119, UCMJ, in detail. Id. at 335-38. The Court noted the discussion of paragraph 198, in Charles L. Decker et al., Dep’t of Defense, Legal and Legislative Basis, Manual for Courts-Martial, United States (1951), which states that the phrase “ ‘directly affecting the person’ is the result of an endeavor to define the distinction between malum in se and malum prohibitum.” 18 M.J. at 337. However, unlike the majority, the Sargent Court concluded that the reason why Congress redefined involuntary manslaughter to apply to an “offense directly affecting the person” was “not clear from the legislative history.” Id. at 336.
There is no need to resort to Latin when plain English will do. Without clear guidance from the legislative history, the Sargent Court turned to the plain language of Article 119, UCMJ, the MOM’S interpretations, and *273 civilian jurisprudence. Id. at 337-38. Paragraph 198(b) of the 1951 MCM defined an offense directly affecting the person as “one affecting some particular person as distinguished from an offense affecting society in general.” MCM para. 198b, at 355; see also People v. Grieco, 266 N.Y. 48, 193 N.E. 634, 635-36 (1934) (requiring a misdemeanor affecting some particular person or property as distinguished from a misdemeanor affecting society in general). The Sargent Court concluded:
Although the illustrations [of possible qualifying offenses] in the Manual do not purport to be exclusive, they all involve situations in which physical force is applied immediately against an individual’s body. Thus, they suggest that the statutory phrase “affecting the person” uses the word “person” not only to refer to an individual — as distinguished from society in general — but also to mean the physical “person” of the individual. The presence of the word “directly” in Article 119(b)(2) supports such an interpretation and indicates that Congress intended involuntary manslaughter to be a crime narrower in scope than it had been in military law before enactment of the Code.
18 M. J. at 338.
Applying this standard, the Sargent Court determined that distribution is not an offense directly affecting the person, even if the purchaser later died from an overdose of the drug. Id. at 339. I agree. However, the Court went on to state that:
[W]hen the seller has gone further and assisted the purchaser in injecting or ingesting the drug, the sale becomes one which does directly affect the person for purposes of Article 119(b)(2). Furthermore, because assisting someone to inject or ingest a drug constitutes aiding and abetting use of the drug and because such use is “an offense directly affecting the person,” this prerequisite for Article 119(b)(2)’s application is present under those circumstances.

Id.

I would adopt the position of the Sargent Court, and hold that assisting the ingestion or injection of a controlled substance, and thereby aiding and abetting wrongful use, would sustain an involuntary manslaughter conviction under Article 119(b)(2), UCMJ. Assisting someone to take a drug directly affects that person. While the use of drugs has a deleterious effect on military discipline and readiness in general,[1] wrongful use of a controlled substance also has a direct physical effect on the body of the user, a particular person. Civilian precedent also supports the view that language like that of Article 119(b)(2), UCMJ, would authorize a manslaughter conviction of someone who assists the ingestion or injection of a controlled substance. See, e.g., State v. Forsman, 260 N.W.2d 160, 164 (Minn.1977) (“The distribution of heroin by direct injection into the body of another is a felony ‘upon or affecting the person whose death was caused’ thereby.” (footnote omitted)).[2]
The record supports Appellant’s conviction for aiding and abetting use by assisting in the ingestion of the drug. In his statement, Appellant admitted the following facts:
When she saw me snorting the two pills Leah asked me if her and her friend could have the other one. I told her “yes.” That is when I smashed it on the nightstand for them to snort it. I then divided it with a card that I had in my wallet. They then came to the nightstand and snorted the pill I had crushed for them.
Although Appellant claims that he was “dividing a whole into two parts to effectuate two distributions,” his actions went beyond the mere transfer of possession. While there *274 was no injection to perform, Appellant actively took the additional steps necessary to aid in ingesting the controlled substance. Compare United States v. Dillon, 18 M.J. 340, 342-43 (C.M.A.1984) (the facts did not sustain involuntary manslaughter conviction when “the evidence was uncontradicted that the decedent alone divided the powder on a mirror with a razor blade; mixed the powder in a spoon; and injected it twice into his own arms without any assistance from appellant”); United States v. Henderson, 23 M.J. 77, 80-81 (C.M.A.1986) (appellant became culpably negligent for an unlawful death “by making available a large quantity of cocaine knowing it would be injected, by permitting the privacy of his room to be utilized for the injection, by encouraging the decedent to ‘get fired up,’ and by his presence during the consumption of the cocaine”). Appellant crushed the pills, thereby removing the timed-release coating, and divided the resulting powder into two lines for snorting. The drugs immediately had a direct physical effect on LK, ultimately causing her death. These actions go beyond mere distribution, and include almost everything possible to aid ingestion by snorting the drug.

Issue 2

I would hold that Appellant’s conviction is legally sufficient, regardless of whether LK was subject to the UCMJ or was violating applicable federal or state laws. The offense in question is not LK’s wrongful use — the offense is Appellant’s aiding and abetting wrongful use. See MCM pt. IV, para. 44.-b.(2)(d) (“while the accused was perpetrating or attempting to perpetrate an offense directly affecting the person” (emphasis added)). Appellant is not relieved from his responsibility for aiding and abetting wrongful use by LK’s legal status.
Article 77(1), UCMJ, applies to “Any person punishable under this chapter who ... commits an offense punishable by this chapter, or aids, abets, counsels, commands or procures its commission.” Emphasis added. Under Article 77(1), UCMJ, Appellant is a principal. Principals are independently liable, so that “[o]ne may be a principal, even if the perpetrator is not identified or prosecuted, or is acquitted.” MCM pt. IV, para. l.b.(6); see also Standefer v. United States, 447 U.S. 10, 20, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980) (“[A]ll participants in conduct violating a federal criminal statute are ‘principals.’ As such, they are punishable for their criminal conduct; the fate of other participants is irrelevant.”).
This Court has affirmed convictions of ser-vicemembers who aided and abetted civilians who were not subject to the UCMJ. In United States v. Hill, for example, the Court affirmed the conviction of an accused who aided and abetted the wrongful distribution of narcotics, despite the fact that the individual he was aiding and abetting was a civilian not subject to the UCMJ. 25 M.J. 411, 412-15 (C.M.A.1988); see also United States v. Jones, 37 M.J. 459, 461 (C.M.A.1993) (affirming a conviction for attempting to distribute a controlled substance under the theory that the accused had aided and abetted a civilian in the distribution).
While this Court has not addressed a situation where the perpetrator was a civilian who committed a crime that was not also unlawful under state or federal law, the lower courts have by implication. In United States v. Minor, the United States Army Court of Military Review affirmed a conviction for sodomy by aiding and abetting a civilian, without considering whether sodomy was an offense in the local jurisdiction. 11 M.J. 608, 611 (A.C.M.R.1981) (“The amenability of the actual perpetrator to prosecution is not a requirement for criminal liability as an aider and abettor. The determinant is whether the act aided and abetted is an offense, not whether the perpetrator is subject to prosecution.”). In United States v. Blevins, the United States Air Force Board of Review addressed the possible consequences of precluding trial when the principal offender was not amenable to prosecution, noting:
It would place a most difficult burden on military law to construe Article 78, Uniform Code of Military Justice, as being inapplicable in situations where the principal offender was not subject to trial and punishment under the Code. In many in *275 stances, the only practical solution would be to turn the military accessory over to the Federal or state court, as applicable, since an alternative prosecution under the general article would be very difficult and risk the hazard of preemption. Further, if the offense occurred in a foreign country, the accused would either go unpunished, or have to be turned over to a foreign court, always a sensitive and undesirable situation.
34 C.M.R. 967, 979 (A.F.B.R.1964) (citations omitted). The Court concluded that:
a military accused may be convicted under Article 78, Uniform Code of Military Justice, without regard to the amenability of the principal offender to military jurisdiction [which] is consistent with the wording of the Article itself, with the manifest intent of the framers of the Code that military personnel can be tried by court-martial for violation of its punitive articles, and with the continuing relaxing of the rigors of the common law. Id.
Thus, the requirement is that an “offense punishable by this chapter” be committed, not that the perpetrator be amenable to prosecution. Article 77(1), UCMJ; Article 119(b)(2), UCMJ. Article 112a, UCMJ, 10 U.S.C. § 912a (2006), provides that “[a]ny person subject to this chapter who wrongfully uses ... a substance described in subsection (b) shall be punished as a court-martial may direct.” Therefore, the elements for wrongful use of a controlled substance are:
(a) That the accused used a controlled substance; and
(b) That the use by the accused was wrongful.
MCM pt. IV, para. 37.b.(2). Appellant’s aided and abetted the use of a controlled substance, and his actions were wrongful under Article 112a, UCMJ. That LK is not subject to prosecution does not relieve Appellant of liability as a principal under Article 77(1), UCMJ.[3]
For the reasons stated above, I respectfully dissent.

. See, e.g., Hearings on S. 2521 Before the Sub-comm. on Manpower and Personnel of the Comm, on Armed Servs., 97th Cong. 14 (1983) (opening statement of Sen. Roger W. Jepsen, Chairman) (describing "drug abuse in the military” as “a most serious threat to our military readiness”), available at http://www.loc.gov/rr/frd/Military_ Law/pdl/act_1982.pdf.

. Assisting someone take a drug is more than distribution and it either affects the person taking the drug or it does not. Drawing distinctions between handing someone a needle and sticking a needle in someone’s arm is, in a phrase, too fine a point to draw meaningful and understandable distinctions in criminal law.

. Of course, the Government has masked the clarity of the law in the manner in which the specification was drafted. The specification references the aiding and abetting of “her wrongful use” as opposed to "the wrongful use, an offense punishable by this chapter.” Nonetheless, I am satisfied that the specification and the underlying law put Appellant on notice as to what he had to defend against. The arguments at trial indicate so as well.